IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:19-cv-196-CWR-FKB |
| BANKPLUS; BANKPLUS WEALTH MANAGEMENT, LLC; GEE GEE PATRIDGE, VICE PRESIDENT AND CHIEF OPERATING OFFICER OF BANKPLUS; STEWART PATRIDGE; JASON COWGILL; MARTIN MURPHREE; MUTUAL OF OMAHA INSURANCE COMPANY; and MUTUAL OF OMAHA INVESTOR SERVICES, INC. | DEFENDANTS |

### SEPARATE ANSWER AND DEFENSES OF JASON COWGILL

COMES NOW Jason Cowgill ("Cowgill"), one of the Defendants herein, by and through his attorneys of record, and files his Separate Answer and Defenses to the Receiver's Complaint, and shows unto the Court the following:

### FIRST DEFENSE

The Receiver's Complaint fails to state a claim against Cowgill upon which relief may be granted and must be dismissed. F. R. Civ. P. 12(b)(6).

### SECOND DEFENSE

### ANSWER

All allegations of the Complaint not expressly admitted by Cowgill are denied. Cowgill's admissions are confined to the exact language in this Answer, and to the extent any response varies from the wording of the Complaint's allegations, those allegations are denied. Without waiving

his right to be heard regarding the above defenses, Cowgill responds to the allegations contained in the Receiver's Complaint, paragraph by paragraph, as follows:

In response to the first unnumbered paragraph on page two under the heading "Introduction" and which begins with "For more than ten years," this paragraph does not appear to pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

In response to the second unnumbered paragraph on page two that begins with "Madison Timber had to continuously," this paragraph does not appear to pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

In response to the third unnumbered paragraph on page two that begins with "Defendants substantially assisted," Cowgill denies all allegations that pertain to him. He is without sufficient information or belief to form a basis as to the truth or veracity of the allegations as they pertain to the other Defendants and, therefore, denies the same. All remaining allegations are denied.

1. Admitted.

2. The allegations contained in Paragraph 2 do not pertain to Cowgill and, therefore, no response is required. To the extent a response is required, Cowgill admits that this action is related to a civil action pending before the Court styled *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*, No. 3:18-cv-252-CWR-FKB (*SEC v. Adams*). The pleadings in that action speak for themselves. All allegations not expressly admitted are denied.

3. The allegations contained in Paragraph 3 do not pertain to Cowgill and, therefore, no response is required. To the extent a response is required, the allegations in Paragraph 3 are not directed to Cowgill, and no response is necessary. Further, the allegations in Paragraph 3 attempt to state legal conclusions to which no response is required by Cowgill. To the extent a response is required, Cowgill denies that the Receiver is entitled to bring any suit or claim against him. All allegations not expressly admitted are denied.

4. The allegations contained in Paragraph 4 do not pertain to Cowgill and, therefore, no response is required. To the extent a response is required, the referenced pleadings in *SEC v. Adams* speak for themselves. All allegations not expressly admitted are denied.

5. Cowgill admits that Plaintiff is the Court-appointed Receiver for the estates of Adams and Madison Timber. Regarding the remainder of the allegations of Paragraph 5, the Court's order speaks for itself, and Cowgill denies that the Receiver has standing to pursue claims against him. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of Paragraph 5 and therefore denies the same.

6.-9. Paragraphs 6-9 do not pertain to Cowgill and, therefore, no response is required. To the extent a response is required, Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of Paragraphs 6-9 and therefore denies the same.

10. Admitted.

11.-13. Paragraphs 11-13 do not pertain to Cowgill and, therefore, no response is required. To the extent a response is required, Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of Paragraphs 11-13 and therefore denies the same.

14. Paragraph 14 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he admits that he has learned

that Lamar Adams, through Madison Timber, operated a Ponzi scheme that purportedly purchased timber from landowners and resold it to lumber mills at higher prices. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of this paragraph and, therefore, denies the same.

15. Paragraph 15 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

16. Paragraph 16 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he admits that he believed Madison Timber would use loans to acquire timber deeds and cutting agreements; that Madison Timber would sell the timber to lumber mills at a higher price; and that Madison Timber would use proceeds from those sales to repay principal plus interest to investors. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of the contents of this paragraph and, therefore, denies the same.

17. Paragraph 17 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he admits that investors received promissory notes in the amount of their loans, payable in twelve monthly installments together with promised interest; that investors received twelve predated checks, each in the amount of the installment due under the promissory note; and that investors received a timber deed and cutting agreement by which a named landowner purported to grant to Madison Timber the rights to harvest timber on the land described in the deed and by which Madison Timber purported to grant its rights

4

to the investor. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of this paragraph and, therefore, denies the same.

18. Paragraph 18 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he admits upon information and belief that it appears most, if not all, of the timber deeds and cutting agreements have been deemed fraudulent. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of this paragraph and, therefore, denies the same.

19. Cowgill denies being a recruiter for Madison Timber. Cowgill admits that two personal friends solicited him for suggestions on possible investment opportunities and that Cowgill mentioned several possible opportunities to each of them, including Madison Timber. In both instances, Cowgill's personal friends made it known that they wanted to pursue Madison Timber. These personal friends also happened to be BankPlus customers. None of these personal friends incurred any loss as a result of their investing in Madison Timber. In fact, one of the two friends had family that sold timber to Madison Timber. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of this paragraph and, therefore, denies the same.

20. Paragraph 20 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

21. Paragraph 21 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he admits that Lamar Adams turned himself in to authorities on April 19, 2018. He is without sufficient information or belief to

form a basis as to the truth or veracity of the remainder of this paragraph and, therefore, denies the same.

22.-23.    Paragraphs 22-23 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he admits the allegations of Paragraphs 22-23 based on information and belief.

24.    Paragraph 24 attempts to state legal conclusions to which no response is required by Cowgill. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the allegations of this paragraph and, therefore, denies the same.

25.-26.    The allegations in Paragraphs 25-26 attempt to state legal conclusions to which no response is required by Cowgill. To the extent a response is required, Cowgill denies all of the allegations in Paragraphs 25-26.

27.    It is unclear whether Paragraph 27 is directed at Cowgill. To the extent that it pertains to him, Cowgill admits that he was a BankPlus employee for some of the time period described in Paragraph 27. Cowgill denies being a recruiter for Madison Timber. Cowgill admits that two personal friends solicited him for suggestions on possible investment opportunities and that Cowgill mentioned several possible opportunities to each of them, including Madison Timber. In both instances, Cowgill's personal friends made it known that they wanted to pursue Madison Timber. These personal friends also happened to be BankPlus customers. None of these personal friends incurred any loss of any kind as a result of their investing in Madison Timber. In fact, one of the two friends had family that sold timber to Madison Timber. Cowgill further admits that he is aware of one meeting at the BankPlus Southaven branch in a conference room during normal business hours and that it now appears to have been related to Madison Timber. Cowgill did not

participate in this meeting nor was he aware of the meeting's occurrence until it concluded. Cowgill admits that Lamar Adams was one of the participants in this meeting. Cowgill was introduced to Lamar Adams after the meeting was concluded and that Cowgill and Adams exchanged a handshake in passing. This represents Cowgill's only interaction with Lamar Adams and Cowgill denies any other interaction with Lamar Adams of any kind. Cowgill is without sufficient knowledge or information to admit or deny the occurrence of any other such meetings and, therefore, denies the same. Cowgill denies participating in any purported Madison Timber meeting that may have taken place in any BankPlus office. Cowgill admits that he assisted with deposits that pertained to Madison Timber at the express authorization and direction of the appropriate accountholder. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remaining allegations of this paragraph and, therefore, denies the same.

28. Paragraph 28 does pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

29. Paragraph 29 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he denies being one of Wayne Kelly's "friends" as mentioned in Paragraph 29. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of this paragraph and, therefore, denies the same.

30.-33. Paragraphs 30-33 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient

information or belief to form a basis as to the truth or veracity of the contents of these paragraphs and, therefore, denies the same.

34. Cowgill admits that he was the manager of BankPlus' Southaven branch office from approximately 2008 to February 2015. Cowgill admits to recalling one meeting that occurred at the BankPlus Southaven branch in a conference room during normal business hours that now appears to have been related to Madison Timber. Cowgill did not participate in that meeting nor was he aware of the meeting's occurrence until it concluded. Cowgill admits that Lamar Adams was one of the participants in this meeting. Cowgill was introduced to Lamar Adams after the meeting was concluded and that Cowgill and Adams exchanged a handshake in passing. This represents Cowgill's only interaction with Lamar Adams and Cowgill denies any other interaction with Lamar Adams of any kind. Cowgill is without sufficient knowledge or information to admit or deny the occurrence of any other such meetings and, therefore, denies the same. Cowgill denies participating in any purported Madison Timber meeting that may have taken place in any BankPlus office. Cowgill admits that he believed such activity was sanctioned by BankPlus' Chief Financial/Operations Officer. Cowgill denies that BankPlus' Chief Financial/Operations Officer ever inferred to him that this activity was sanctioned. Cowgill denies the remainder of Paragraph 34 insofar as it pertains to him.

35. Cowgill is without sufficient information or belief to admit or deny the allegations of Paragraph 35 and, therefore, denies the same. Cowgill admits that Kelly, a BankPlus customer, expressly authorized and directed him to withdraw funds from the Kelly Management account, a BankPlus account, and to make those funds available to Stewart Patridge. Cowgill denies the remainder of this paragraph.

36. Cowgill admits that he believed that the documentation referenced in Paragraph 36 was prepared by law firms including Butler Snow and Baker Donelson. Cowgill denies that Baker Donelson or Butler Snow or anyone associated with either law firm ever led him to believe that they prepared said documentation. Cowgill denies the remainder of this Paragraph.

37. Cowgill is without sufficient information or belief to admit or deny the allegations of Paragraph 37 and, therefore, denies the same.

38-42. Paragraphs 38-42 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of Paragraphs 38-42 and, therefore, denies the same.

43.-46. Paragraphs 43-46 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of these paragraphs and, therefore, denies the same.

47. Cowgill admits that he verified the completion of deposits and wires at the request of Wayne Kelly or Stewart Patridge for deposits initiated by Madison Timber to investors that were also BankPlus account holders. Cowgill does not recall Wayne Kelly or Stewart Patridge requesting confirmation of deposits after Stewart Patridge ceased to be involved with Madison Timber. Cowgill denies the remainder of Paragraph 47.

48. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

49. Cowgill is without sufficient information or belief as to the truth of the allegations that do not pertain to him and, therefore, denies the same. Cowgill admits that he called investors

to notify them that Stewart Patridge was no longer involved with Madison Timber, that Cowgill could continue to confirm deposits of their proceeds checks if they desired for him to do so, or that they could handle their deposits into their accounts themselves. Cowgill denies the remainder of Paragraph 49.

50. Cowgill admits that at some point he was paid $500 per month from Kelly Management to assist with depositing Madison Timber payments into the BankPlus accounts of Madison Timber investors at the express direction and authorization of Wayne Kelly; and to making transfers from BankPlus accountholder's accounts to Madison Timber only at the express direction and authorization of the respective BankPlus accountholder, and that such was for the purpose of making an investment in Madison Timber. Cowgill denies the remainder of Paragraph 50.

51. Paragraph 51 does not appear to pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis at to the truth or veracity of the allegations of Paragraph 51 and, therefore, denies the same.

52. Cowgill admits that BankPlus employees at the Southaven branch, himself included, believed that Madison Timber-related activities were sanctioned because Stewart Patridge's mother was BankPlus' Chief Operations Officer and an investor in Madison Timber; that BankPlus made loans to BankPlus customers using their Madison Timber promissory notes as collateral or an income source; and that these facts legitimized Madison Timber and BankPlus employees' handling of Madison Timber business in BankPlus employees' eyes, including his own. Cowgill denies that BankPlus' Chief Operations Officer ever led BankPlus employees to believe that Madison Timber activities were sanctioned.

10

53. Paragraph 53 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

54. Cowgill admits that he was eventually paid 1% of each dollar investment made by an investor credited to Stewart Patridge. Cowgill admits that he was paid 2% of each dollar of the investments made by his two personal friends, respectively, in Madison Timber. Cowgill denies recruiting these two personal friends and denies that they lost any money as a result of Madison Timber. Cowgill admits that payments were made to his then-wife in order to demonstrate a source of income for credit reasons because she was a stay-at-home mother at the time.

55. Cowgill admits the allegations contained in the first sentence of Paragraph 55. Cowgill denies the remainder of Paragraph 55.

56. Cowgill admits that he or his then-wife received payments from Kelly Management in the approximate amount of $96,900.00. The remainder of the allegations in Paragraph 56 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

57. Cowgill is without sufficient information or belief as to the truth or veracity of those allegations not pertaining to him and, therefore, denies the same. Cowgill denies the remainder of the allegations in Paragraph 57 and states affirmatively that he verified the existence of the timber deeds dozens of times with land records available via the internet and at least one time over the phone with a court's land records office.

11

58. Cowgill denies the allegations of Paragraph 58 including subparagraphs (a) through (g).

59. Paragraph 59 contains legal assertions to which no response is required. To the extent a response is required, Cowgill denies the allegations of Paragraph 59 that pertain to him.

60.-63. Paragraphs 60-63 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of these paragraphs and, therefore, denies the same.

64. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the contents of Paragraph 64 and, therefore, denies the same. Cowgill specifically denies being a party to any alleged money-laundering operation or anything remotely similar to it.

65. Cowgill admits to receiving payments from Kelly Management and that his then-wife received payments from Kelly Management. Cowgill admits that he assisted with deposits relating to Madison Timber at the express authorization and direction of the respective BankPlus customers associated with the corresponding account. Cowgill denies any allegations directed to him and is without sufficient information or knowledge to form a basis as to the truth or veracity of the remainder of Paragraph 65 and, therefore, denies the same.

66. Paragraph 66 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of this paragraph and, therefore, denies the same.

67. Denied., as phrased.

68.-71.  Paragraphs 68-71 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of these paragraphs and, therefore, denies the same.

72.  Cowgill denies all allegations against him. Cowgill is without sufficient information or belief as to the truth or veracity of those allegations not pertaining to him and, therefore, denies the same.

73.  Cowgill admits that he was employed by BankPlus and that the person whose statements are referenced in Paragraph 73 solicited Cowgill for the opportunity to reinvest in Madison Timber at all times. Cowgill denies the remaining allegations contained in Paragraph 73 that pertain to him.

74.  Paragraph 74 does not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, Cowgill admits that Madison Timber has been determined to be fraudulent. Cowgill affirmatively states that he never knew Madison Timber was a fraud. Cowgill is without sufficient information or belief to form a basis as to the truth or veracity of the remainder of the allegations contained in Paragraph 74 and, therefore, denies the same.

75-81.  Paragraphs 75 through 81 do not pertain to Cowgill and, therefore, no response is required. To the extent that Cowgill is mistaken and a response is required, he is without sufficient information or belief to form a basis as to the truth or veracity of the contents of Paragraphs 75 through 81 and, therefore, denies the same.

82.  Cowgill restates and incorporates by reference his responses to Paragraphs 1-81 of the Receiver's Complaint as if fully set forth herein.

83. Paragraph 83 is an incomplete statement of Mississippi law to which no response is required by Cowgill. Further, the allegations of Paragraph 83 attempt to state legal conclusions to which no response is required by Cowgill. To the extent a response is required, Cowgill denies all allegations of Paragraph 83 that pertain to him.

84. Denied.

85. Denied.

86. Cowgill admits that Madison Timber has been determined to be a Ponzi scheme. Cowgill denies ever knowing Adams' purpose was unlawful, denies ever knowing Madison Timber was a Ponzi scheme, and denies ever acting with any unlawful purpose. All allegations not expressly admitted are denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Cowgill restates and incorporates by reference his responses to Paragraphs 1-94 of the Receiver's Complaint as if fully set forth herein.

96. Paragraph 96 is an incomplete statement of law to which no response is required. To the extent a response is required, Cowgill denies the allegations in Paragraph 96 that pertain to him.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Cowgill restates and incorporates by reference his responses to Paragraphs 1-103 of the Receiver's Complaint as if fully set forth herein.

105. Paragraph 105 is an incomplete statement of law to which no response is required. To the extent a response is required, Cowgill denies the allegations in Paragraph 105 that pertain to him.

106. Paragraph 106 is an incomplete statement of law to which no response is required. To the extent a response is required, Cowgill denies the allegations in Paragraph 106 that pertain to him.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Cowgill restates and incorporates by reference his responses to Paragraphs 1-113 of the Receiver's Complaint as if fully set forth herein.

115. Paragraph 115 is an incomplete statement of law to which no response is required. To the extent a response is required, Cowgill denies the allegations in Paragraph 115 that pertain to him.

116. Paragraph 116 is an incomplete statement of law to which no response is required. To the extent a response is required, Cowgill denies the allegations in Paragraph 116 that pertain to him.

117. Denied.

118. Denied.

119. Cowgill restates and incorporates by reference his responses to Paragraphs 1-118 of the Receiver's Complaint as if fully set forth herein.

120-127. Paragraphs 120 through 127 do not pertain to Cowgill and, therefore, do not require a response from him. To the extent a response is required from Cowgill to Paragraphs 120 through 127, Cowgill is without sufficient knowledge or information to form a knowledge or belief as to the truth of those allegations and, therefore, denies all allegations in Paragraphs 120 through 127.

128. Cowgill restates and incorporates by reference his responses to Paragraphs 1-127 of the Receiver's Complaint as if fully set forth herein.

129-137. Paragraphs 129 through 137 do not pertain to Cowgill and, therefore, do not require a response from him. To the extent a response is required from Cowgill to Paragraphs 129 through 137, Cowgill denies all allegations in Paragraphs 129 through 137 that attempt to allege fault based on his actions.

138-140. Paragraphs 138 through 140 do not pertain to Cowgill and, therefore, do not require a response from him. To the extent a response is required from Cowgill to Paragraphs 138 through 140, Cowgill is without sufficient knowledge or information to form a knowledge or belief as to the truth of those allegations and, therefore, denies all allegations in Paragraphs 138 through 140.

141-143. Paragraphs 141 through 143 do not pertain to Cowgill and, therefore, do not require a response from him. To the extent a response is required from Cowgill to Paragraphs 141 through 143, Cowgill is without sufficient knowledge or information to form a knowledge or belief as to the truth of those allegations and, therefore, denies all allegations in Paragraphs 141 through 143.

144. Denied.

145. Denied.

146-147. Paragraphs 146 through 147 do not pertain to Cowgill and, therefore, do not require a response from him. To the extent a response is required from Cowgill to Paragraphs 146 through 147, Cowgill is without sufficient knowledge or information to form a knowledge or belief as to the truth of those allegations and, therefore, denies all allegations in Paragraphs 146 through 147.

In response to the unnumbered paragraph beginning with "WHEREFORE, the Receiver respectfully[,]" on page 36 of the complaint including subparagraphs 1 through 3, Cowgill denies that the Receiver is entitled to judgment or to any other relief against him, in any sum whatsoever, and requests that the Receiver's Complaint be dismissed with prejudice, with all costs assessed to the Receiver.

AND NOW, having fulling responded to the allegations contained in the Receiver's Complaint, and having denied any liability in the premises, Defendant asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

The Receiver's claims against Cowgill are barred by the doctrine of *in pari delicto*. The Receiver stands in the shoes of Adams and Madison Timber, the primary wrongdoers who controlled the Ponzi scheme. Accordingly, the Receiver cannot seek damages or contribution from Cowgill.

### SECOND AFFIRMATIVE DEFENSE

The Receiver's claims against Cowgill are barred because the Receiver lacks standing to pursue claims on behalf of anyone other than Adams and Madison Timber.

### THIRD AFFIRMATIVE DEFENSE

The Receiver's claims against Cowgill are barred because he did not owe any legal duty to Adams or Madison Timber, and he did not breach any legal duty allegedly owed to Adams or Madison Timber.

### FOURTH AFFIRMATIVE DEFENSE

The Receiver's claims against Cowgill are barred by the acts and omissions of Adams and Madison Timber; the acts and omissions of the representatives and agents of Adams and Madison Timber; and the acts and omissions of others for whom Cowgill is not responsible. Cowgill is not directly or proximately responsible for any damages that Adams and Madison Timber might have allegedly suffered. The Receiver's claims against Cowgill are barred because Cowgill complied at all times with all applicable standards of care.

**FIFTH AFFIRMATIVE DEFENSE**

The Receiver's claims against Cowgill are barred by the doctrines of contributory negligence, comparative fault, waiver, estoppel, fraud, illegality, unclean hands, and by the failure of Adams and Madison Timber to mitigate their damages.

**SIXTH AFFIRMATIVE DEFENSE**

The Receiver's claims against Cowgill are barred because the Receiver failed to plead items of special damage and alleged fraud with sufficient particularity.

**SEVENTH AFFIRMATIVE DEFENSE**

To the extent that the Receiver seeks punitive damages, Cowgill would affirmatively show that (a) since punitive damages are penal in nature, Cowgill is entitled to the same procedural safeguards afforded to those charged with a crime, and an assessment for punitive damages herein would be in violation of the Sixth Amendment of the United States Constitution; (b) any claim for punitive damages violates the substantive and procedural due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and the Mississippi Constitution; (c) any award of punitive damages in this case would be in violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, and the Mississippi Constitution since the standards for imposing liability and for assessing the amount for punitive damages are unconstitutionally vague; (d) the application of such an unconstitutionally vague standard is arbitrary, capricious, and not rationally related to any legitimate governmental interest; (e) the Receiver's Complaint fails to state a claim against Cowgill upon which the Receiver may be awarded punitive or exemplary damages; and (f) Cowgill invokes Mississippi statutory law pertaining to punitive damages.

### EIGHTH AFFIRMATIVE DEFENSE

The Receiver's claims against Cowgill are barred because the Receiver has not alleged, and the Receiver cannot show, that Cowgill knew of Adams's fraud or that Madison Timber was a fraudulent scheme.

### NINTH AFFIRMATIVE DEFENSE

The Receiver's claims against Cowgill are barred for the reasons set forth in Cowgill's Motion to Dismiss and Memorandum in Support of the same, which are being filed simultaneously with this Answer and Affirmative Defenses and are incorporated by reference as if set forth in full.

### TENTH AFFIRMATIVE DEFENSE

Some or all of the Receiver's claims are barred by the applicable statute of limitations.

WHEREFORE, having fully answered and defended the Receiver's Complaint, Cowgill demands that the Receiver's Complaint be dismissed with prejudice, with all costs assessed to the Receiver and for such further relief as the Court deems just and proper.

Respectfully submitted,

JASON COWGILL, ONE OF THE
DEFENDANTS HEREIN

BY: */s/ Wilton V. Byars, III*
     OF COUNSEL

WILTON V. BYARS, III - MS BAR NO. 9335
wbyars@danielcoker.com
J. MILES FORKS - MS BAR NO. 105080
mforks@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
265 N. LAMAR BLVD., STE. R
P.O. BOX 1396
OXFORD, MS 38655
TELEPHONE: (662) 232-8979
FACSIMILE: (662) 232-8940