IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALYSSON MILLS, IN HER CAPACITY AS
RECEIVER FOR ARTHUR LAMAR ADAMS
AND MADISON TIMBER PROPERTIES LLC                           PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:19-00196-CWR-FKB

BANKPLUS ET AL.                                              DEFENDANTS

### MEMORANDUM BRIEF IN SUPPORT OF JASON COWGILL'S MOTION TO DISMISS

COMES NOW Jason Cowgill, one of the Defendants herein, by and through undersigned counsel, and files his Memorandum Brief in Support of his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as follows:

### I.  INTRODUCTION

The Receiver filed her Complaint [#1] alleging that Cowgill (1) engaged in a civil conspiracy; (2) aided and abetted the wrongful conduct of others; (3) was reckless, grossly negligent, and negligent; and (4) violated Mississippi's Fraudulent Transfer Act, all in relation to Lamar Adams and Madison Timber Properties LLC (Madison Timber). Because the Receiver's allegations fail to state claims against Cowgill, the Receiver's claims must be dismissed as to Cowgill.

### II.  LAW AND ARGUMENT

**A.  Standard for Dismissal.**

The court must dismiss a complaint that fails to state a claim upon which relief may be granted. F.R.C.P. 12(b)(6). "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should. . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pleaded facts must be accepted as true. *Jones v. Greninger*, 188 F. 3d 322, 324 (5th Cir. 1999). However, conclusory statements, legal conclusions and recitals of the elements of a cause of action are not accepted as true and "do not suffice" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    **B.**    **The Complaint fails to state a claim for civil conspiracy.**

        *(i)*    *The Receiver fails to allege Cowgill had any knowledge of a fraud, let alone agreed to participate in one.*

"To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result." *Orr v. Morgan*, 230 So. 3d 368, 375 (Miss. Ct. App. 2017) (citations, brackets, and ellipsis omitted). "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)). "It is elementary that a conspiracy requires an agreement between the co-conspirators." *Id.* (citing *Brown v. State*, 796 So. 2d 223, 226-27 (Miss. 2001) ("'persons must agree . . . for a conspiracy to exist'")). Contrary to the Receiver's allegations, to state a claim for civil conspiracy, the Receiver must plead sufficient facts to show that Cowgill knew Lamar Adams was operating a fraudulent scheme and agreed to unlawfully conspire with him to further the scheme. "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (citing 16 Am. Jur. 2d Conspiracy § 51); see also

2

*Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 520 (5th Cir. 2018) (civil conspiracy requires proof that conspirator "knew of [the] fraudulent scheme").

Despite the thousands of pages of subpoenaed documents and court filings in this and related matters, and despite Cowgill volunteering to provide all assistance desired by the Receiver, the Complaint is bereft of any alleged facts demonstrating Cowgill knew Lamar Adams was operating a Ponzi scheme. This is because he had no such knowledge. And without knowledge of Lamar Adams' fraudulent conduct, it is impossible for Cowgill to have agreed to further the scheme.

Instead, the Receiver waves alleged "red flags" that are only "suspicious" at best. [#1, ¶58]. The law is clear that "suspicious" "red flags" are insufficient to demonstrate any supposed knowledge. *See Litson- Greunber v. JPMorgan Chase & Co.*, No. 7:09-CV-056-0, 2009 U.S. Dist. LEXIS 117749, at *5-8 (N.D. Tex. Dec. 16, 2009) (Artful pleading of merely a story of suspicious activity that the plaintiff contended should have provided the defendant notice of the Ponzi scheme actions was insufficient to establish actual knowledge); *Rosner v. Bank of China*, No. 06 cv 13562, 2008 U.S. Dist. LEXIS 105984 (S.D.N.Y. Dec. 18, 2008) (Plaintiff must plead facts that give rise to a sufficiently strong inference of actual knowledge and "red flags" or warning signs indicating fraud's existence are insufficient) aff'd 349 Fed. Appx. 637 (2d Cir. 2009); *Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) (alleged warnings signs of fraud do not adequately allege actual knowledge); *El Camino Res. Ltd. v. Huntington Nat'l Bank*, 712 F.3d 917, 920-921, 923 (6th Cir. 2013) ("red flags" associated with an account were insufficient to show the bank had actual knowledge of fraud). Accordingly, Count I against Cowgill must be dismissed.

    *(ii)    The Receiver also fails to identify an underlying tort for civil conspiracy.*

In addition to failing to satisfy the required element of actual knowledge of fraud, the Receiver fails to establish any "underlying tort" or other "unlawful overt act" committed by Cowgill. A valid civil conspiracy claim requires the identification and existence of an underlying tort. *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011). The Receiver makes only vague reference to "tortious acts alleged in this complaint," [#1, ¶84] without identifying what "tortious acts" Cowgill allegedly committed. Without more, the Complaint fails to state a cause for civil conspiracy and should be dismissed.

    **C.    Civil aiding and abetting does not exist in Mississippi, nor does the Complaint state a claim for it.**

"No Mississippi court has ever recognized any of the subsections of the Restatement (Second) of Torts § 876 as viable causes of action." *In re Evans*, 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011). "Additionally, no Mississippi court has recognized a claim for civil aiding and abetting, whether under § 876(b) or § 876(c)." *Id*. The "Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud." *Dale v. Ala Acquisitions Inc.*, 203 F. Supp. 2d 694, 700-01 (S.D. Miss. 2002).[1] The fact that Mississippi does not recognize civil aiding and abetting commands dismissal of the Receiver's claim for civil aiding and abetting. *In re DuPuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liability Lit.*, 888 F. 3d 753, 781 (5th Cir. 2018) ("a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts.").

---

[1] The *Dale* court made an *Erie* guess that such a claim would be viable under Mississippi law, reasoning that a majority of other jurisdictions have recognized such a claim and that Mississippi recognizes the analogous tort of civil conspiracy. *Dale*, 203 F. Supp. 2d at 701; *In re Evans*, 467 B.R. at 409. To date, however, the Mississippi Supreme Court has not recognized the tort as viable, and therefore, this Court should follow *In re Depuy Orthopaedics*, which restrains the Court from recognizing the "novel" aiding and abetting cause of action under § 876(b) of the Restatement (Second) of Torts. 888 F.3d at 781; *see also Fikes*, 813 F. Supp. 2d at 822-23 (finding "Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of action" but declining to make an *Erie* guess because plaintiff failed to allege separate underlying tort and thus failed to state claims for conspiracy and aiding and abetting).

4

Notwithstanding the fact that there is no aiding-and-abetting tort in Mississippi, the Receiver acknowledges that "a defendant is liable [under a claim of aiding and abetting] if he '*knows* that the other's conduct constitutes a breach of duty. . . .'" [#1, ¶96] (emphasis added) (quoting Restatement (Second) of Torts § 876(b) (1979)). Since the Receiver has not alleged facts demonstrating that Cowgill *knew* about a fraud, the Receiver's attempt to rely on "red flags" as proof that Cowgill should have known about a fraud are equally failing here. Accordingly, the Court should Dismiss Count II against Cowgill.

### D.   The Complaint does not state a claim for "recklessness," "gross negligence," or "negligence" (Count III).

The Receiver has failed to state a claim for negligence, gross negligence, or recklessness because she has failed to allege any facts establishing that Cowgill owed a duty to Lamar Adams or Madison Timber. "Whether a duty exists is a question of law." *Midwest Feeders, Inc.*, 886 F.3d at 515 (citation omitted); *see also, e.g., Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 131 (Miss. 2003). The Receiver discusses "ensnaring hundreds of new[,] unwitting investors" [#1, ¶110] who were duped by Lamar Adams and Madison Timber, but the Receiver is not their representative. Instead, the Receiver stands only in the shoes of Lamar Adams and Madison Timber.[2]

"It is quite elementary that there cannot be a tort without a breach of a legal duty." *Savage v. Prudential Life Ins. Co. of Am.*, 121 So. 487, 489 (Miss. 1929). Of course, to prevail on a claim of negligence, the Receiver must prove the four standard elements of a negligence claim by a

---

[2] *See* Order Appointing Receiver [Doc. 33], *SEC v. Adams*, No. 3:18-cv-252-CWR-FKB (S.D. Miss. June 22, 2018). It is black-letter law that the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *see also Troelstrup v. Index Futures Grp., Inc.*, 130 F.3d 1274, 1276 (7th Cir. 1997) (receiver appointed for estate of fraudster "has no possible claim against [a third-party brokerage house], or on behalf of the investors, the victims of the fraud, because he was not *their* receiver" (emphasis in original)).

preponderance of the evidence: the existence of a duty; breach of duty; causation; and damages. *See, e.g., Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017); *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006); *Banks v. Brinker Miss., Inc.*, 146 So. 3d 388, 391 (Miss. Ct. App. 2014). "Further, the plaintiff must show 'a causal connection between the breach and the [injury], such that the breach is the proximate cause of the [injury].'" *Sanderson Farms, Inc.*, 212 So. 3d at 76 (quoting *Double Quick v. Lymas*, 50 So. 3d 292, 298 (Miss. 2010)). But importantly, the "plaintiff must first prove the existence of a duty owed." *Id*. "'Duty and breach of duty, which both involve foreseeability, are essential to finding negligence and [therefore,] must be demonstrated first.'" *Id*. (quoting *Griffith v. Entergy Miss., Inc.*, 203 So. 3d 579, 585 (Miss. 2016)). The Receiver fails to even allege that Cowgill owed a duty to Lamar Adams or Madison Timber, and the Receiver cannot do so because under Mississippi law no such duty existed.

The Receiver cites *Estate of St. Martin v. Hixson*, 145 So. 3d 1124, 1128 (Miss. 2014) for the following quote: "Negligence is a failure to do what the reasonable person would do under the same or similar circumstances." [#1, ¶105]. *Hixson*, however, was a legal malpractice case that analyzed a lawyer's duties of care and loyalty owed to his client. The alleged relationship between Cowgill and Lamar Adams and Madison Timber was strictly limited to Cowgill making deposits into investors' accounts at Madison Timber's direction or deposits into Madison Timber's accounts at investors' direction. Cowgill never owed a duty of any kind to Lamar Adams or Madison Timber.[3]

The Receiver quotes *Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000), for the statement that "wantonness is a failure or refusal to exercise any care, while negligence is a failure

---

[3] The Receiver does not allege that either Lamar Adams or Madison Timber were clients of Cowgill, and they were not. The Receiver likewise does not allege that Cowgill ever performed any professional work for Madison Timber or Lamar Adams or for another client on which Madison Timber relied.

6

to exercise due care." Under Mississippi law, "reckless disregard" is "defined as a 'higher standard than gross negligence, and it embraces willful or wanton conduct which requires *knowingly and intentionally* doing a thing or wrongful act.'" *Collins v. City of Newton*, 240 So. 3d 1211, 1222 (Miss. 2018) (emphasis added) (quoting *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009)). Again, the Complaint is devoid of any facts establishing that Cowgill owed any duty to Adams or Madison Timber, much less that he *knowingly or intentionally* breached such a duty.

The Receiver alleges that Cowgill was "reckless" or "acted with gross negligence" [#1, ¶113] in an effort to bolster the negligence claim into one for punitive damages, which are recoverable "only in cases where the negligence is so gross as to indicate reckless or wanton disregard for the safety of others." *Maupin v. Dennis*, 175 So. 2d 130, 131 (Miss. 1965). Again, the negligence analysis hinges on whether a duty existed in the first place. Because Cowgill did not owe any duty to Lamar Adams or Madison Timber, the Court should dismiss Count III against him.

**E.     The Complaint fails to state a claim for fraudulent transfer.**

The Complaint alleges the Receiver is entitled to any payments Cowgill received and cites generally to Mississippi's Fraudulent Transfer Act (MFTA). Miss. Code Ann. § 15-3-101 *et seq*. This law is based on the Uniform Fraudulent Transfer Act (UFTA). Miss. Code Ann. § 15-3-119. The UFTA went into effect in Mississippi on July 1, 2006. To date, there is no Mississippi state-law precedent interpreting or analyzing this statute that is pertinent to this case. "In general, to assert a claim under the UFTA, the plaintiff must plead and prove that (1) the debtor made a transfer or incurred an obligation; (2) the plaintiff was a creditor of the debtor; and (3) the debtor made the transfer or incurred the obligation with actual intent to hinder, delay[,] or defraud any creditor of the debtor." *Natchez Reg. Med. Ctr. V. Quorum Health Resources LLC*, 2010 WL

3324955, at *6 (S.D. Miss. Aug. 20, 2010) (quoting Stephen Shareff, *Causes of Action to Set Aside or Recover for Fraudulent Transfer or Obligation under Uniform Fraudulent Transfer Act*, 26 Causes of Action 773, at § 3 (Sept.2009)).

    (i)  *The Receiver is not a creditor of Lamar Adams or Madison Timber.*

Under the MFTA, a *creditor* may bring an action for relief against a debtor to void a fraudulent transfer, obtain an "attachment" against the transferred asset, obtain an injunction against further disposition of the debtor's assets, or appoint a receiver to "take charge" of the debtor's transferred asset. Miss. Code Ann. § 15-3-111. However, "[c]learly, to bring an action pursuant to UFTA, the plaintiff must be a **creditor** of the debtor/defendant." *Quorum* at *6 (emphasis added) (citing to Miss. Code Ann. § 15-3-111). As mentioned above in note 2, the Receiver does not stand in the shoes of the former investors of Madison Timber or Lamar Adams/ but only of Lamar Adams and Madison Timber themselves. The Complaint cannot and does not allege that either Lamar Adams or Madison Timber were creditors unto themselves. It is well known that Mississippi follows the strict textual approach when the text of a statute is unambiguous. *See Parker v. Leak River Cellulose LLC*, 621 Fed. Appx. 271, 273 (5th Cir. 2015) (a "purposivist approach to statutory interpretation is at odds with the strict textual approach applicable under Mississippi law when the text is unambiguous."); *MDOT v. Allred*, 928 So. 2d 152, 155 (Miss. 2006) ("Whatever the legislature says in the text of the statute is considered the best evidence of the legislative intent."). As such, Count IV should be dismissed as to Cowgill because the Receiver has no standing to pursue claims held by the investors/creditors.

    (ii)  *The Complaint fails to demonstrate any actual intent.*

Mississippi's UFTA provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made

or the obligation was incurred, if the debtor made the transfer or incurred the obligation with *actual intent* to hinder, delay[,] or defraud any creditor of the debtor." Miss. Code Ann. § 15-3-107 (emphasis added). Section 107(2) identifies the fourteen "badges of fraud" generally used by courts to determine whether actual intent exists. *RDS Real Estate LLC v. Abrams Grp. Constr. LLC*, 2017 WL 278479, at *3 (S.D. Miss. Jan. 20, 2017). "No specific combination of badges is necessary for a finding of actual intent and the presence of any of the badges of fraud does not compel such a finding." *RDS Real Estate LLC v. Abrams Grp. Constr. LLC*, 2017 WL 278479, at *3 (S.D. Miss. Jan. 20, 2017) (quoting *In re Vista Bella Inc.*, 511 B.R. 163, 194 (Bankr. S.D. Ala. 2014)). "The badges merely highlight circumstances that suggest that the transfer was made with fraudulent intent. With that being said, it is clear that actual intent to hinder, delay, or defraud is a heavily fact-dependent question." *Id*. (quoting *Vista Bella*, supra at 194-95).

      The Complaint mentions only two of the fourteen "badges" listed in section 107: that (1) Madison Timber was insolvent when Cowgill received payments from Kelly Management, and that (2) Madison Timber and Lamar Adams did not receive any value for the payments made to Cowgill by Kelly Management. Even accepting the conclusory statement that Madison Timber was insolvent at all times when Cowgill received payments from Kelly Management, the Complaint belies the assertion that Madison Timber and/or Lamar Adams did not receive any value for Kelly Management's payments to Cowgill. "In interpreting a similar provision of the Bankruptcy Code, the Fifth Circuit has recognized that the question of reasonable equivalence is usually a question of fact, or is at least fact-intensive." *RDS Real Estate LLC*, at *4 (citing *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003); *Matter of Zedda*, 103 F.3d 1195, 1206 (5th Cir. 1997) (parenthetical omitted)). There is no need to do that here since the Complaint alleges that, at a minimum, Cowgill was paid to fill out deposit slips and deposit checks. [#1, ¶50].

A look to the remaining twelve "badges" emphasizes the failure of the Complaint to allege the payments to Cowgill were fraudulent transfers: (1) Cowgill was not an insider; (2) Madison Timber or Lamar Adams did not retain possession or control over any payments Kelly Management made to Cowgill; (3) Form 1099s were completed by Jason Cowgill and/or his ex-wife reporting their Kelly Management income, clearly not concealing any payment; (4) Madison Timber or Lamar Adams had not been sued or threatened with suit before the Kelly Management payments to Cowgill; and (5) the value of the tasks performed (the "consideration") was reasonably equivalent to the Kelly Management payments to Cowgill.

Badges aside, wholly lacking in the 36 pages of the Complaint is any allegation, much less than any showing, that any Kelly Management payment Cowgill received was in any way some deliberate attempt by Lamar Adams or Madison Timber to shield any of their assets from creditors. This alone warrants dismissal of Count IV.

### F.   *In Pari Delicto* bars the Receiver's claims against Cowgill.

*(i)   The Receiver stands in the shoes of Lamar Adams and Madison Timber, and the Complaint alleges that they are the wrongdoers.*

The *in pari delicto* doctrine enforces the longstanding "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *In Pari Delicto Doctrine*, Black's Law Dictionary (10th ed. 2014). The *in pari delicto* doctrine "applies where the plaintiff is equally or more culpable than the defendant or acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction." *Latham v. Johnson*, 2018 WL 3121362, at *10 (Miss. Ct. App. June 26, 2018) (citing 27A Am. Jur. 2d, Equity § 103, p. 641 (2008)), *cert. denied* 260 So. 3d 798 (Miss. 2019). The "*in pari delicto* defense has repeatedly been used to bar the actions of 'bankruptcy trustee[s] against third parties who participated in or facilitated wrongful conduct of the debtor[s].'" *In re Fair Fin. Co.*, 834 F.3d 651, 676 (6th Cir.

10

2016) (quoting *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008) (collecting cases)). Like bankruptcy trustees, the Receiver stands in the shoes of the debtors—Lamar Adams and Madison Timber. At this motion-to-dismiss stage, the affirmative defense of *in pari delicto* bars the Receiver's recovery because the defense is established "on the face of the complaint." *See Alexander v. Verizon Wireless Servs.*, LLC, 875 F.3d 243, 249 (5th Cir. 2017).

The Receiver's Complaint alleges that Lamar Adams and Madison Timber are the wrongdoers. The Receiver alleges no facts establishing that Cowgill acted with any knowledge as to the illegality or wrongfulness of Adams' fraudulent scheme. [#1, pp. 2, 4-8, 10-23]. Thus, there can be no dispute from the face of the Complaint that Adams' conduct was at least "equally or more culpable" than that of Cowgill. Accordingly, the Court should dismiss Counts I, II, III, and IV against Cowgill pursuant to the doctrine of *in pari delicto*.

       (ii)       The Receiver cannot claim an "Innocent Successor" Exception.

While Mississippi courts have not yet spoken on this question, some states recognize a limited exception to the *in pari delicto* doctrine for so-called "innocent successors." *See, e.g., Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (applying Indiana law); *Janvey*, 712 F.3d at 191 (discussing *Scholes* and applying Texas law). Where the exception is available, it permits a receiver "to assert the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred by the principal of the Ponzi scheme[.]" *Id*.

An innocent-successor exception does not apply to the Receiver's tort claims because Mississippi has never recognized the exception and would not do so in these circumstances. In fact, the trend in other jurisdictions is to either narrow or refuse to apply the exception. The Mississippi Supreme Court has recognized the doctrine of *in pari delicto* since at least 1840, *see Glidewell v. Hite*, 6 Miss. 110, 134 (Miss. Err. & App. 1840), without once excusing a corporation

11

from its own fraud. Since the Seventh Circuit first recognized the innocent successor rule (under Illinois law) in 1995, that court has criticized and progressively narrowed it. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 599 (7th Cir. 2012). Other courts in recent years have flatly refused to adopt the exception, including the highest court of New York in *Kirschner v. KPMG LLP*, 938 N.E.2d 941 (N.Y. 2010). *Kirschner* rejected a litigation trustee's attempt to sue third parties and evade the *in pari delicto* defense, reasoning that even after a fraudster has been removed, a corporation cannot impose liability for his conduct onto third parties that allegedly failed to prevent his fraud. The court refused to permit "the interests of innocent stakeholders of corporate fraudsters [to] trump those of innocent stakeholders of the outside professionals who are the defendants in these cases." *Id*. at 475.

### III. CONCLUSION

No amendment can cure the core defects in the Complaint: (1) that Cowgill did not know that Madison timber was a Ponzi scheme nor did he agree to partake in one or any other fraud; (2) that there is no civil aiding and abetting in Mississippi; (3) that the Receiver is not a creditor of Lamar Adams or Madison Timber; (4) that the Kelly Management payments made to Cowgill were not made in an effort to hinder, delay, or defraud any creditors; (5) that Cowgill owed no duty to Lamar Adams or Madison Timber; (6) that *in pari delicto* bars the Receiver's claims; and (7) that the Receiver cannot claim to be an innocent successor. If there were facts to remedy these flaws, the Receiver would have alleged them. *Greninger*, 188 F.3d at 327 (dismissal with prejudice proper where "a complaint alleges the plaintiff's best case"). As such, dismissal with prejudice is appropriate.

WHEREFORE, PREMISES CONSIDERED, Cowgill respectfully requests that this Court grant his Motion to Dismiss and for such additional relief as the Court deems just and proper.

Respectfully submitted,

JASON COWGILL, ONE OF THE DEFENDANTS HEREIN

BY: *s/ Wilton V. Byars, III*
    OF COUNSEL

WILTON V. BYARS, III - BAR # 9335
wbyars@danielcoker.com
J. MILES FORKS - BAR # 105080
mforks@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
265 NORTH LAMAR BOULEVARD, SUITE R
POST OFFICE BOX 1396
OXFORD, MISSISSIPPI 38655-1396
TELEPHONE: (662) 232-8979
FACSIMILE: (662) 232-8940