**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ALYSSON MILLS, IN HER CAPACITY**                                    **PLAINTIFF**
**AS RECEIVER FOR ARTHUR LAMAR
ADAMS AND MADISON TIMBER
PROPERTIES, LLC,**

**VS.**                                     **CIVIL ACTION NO.:   3:19-cv-196-CWR-FKB**

**BANKPLUS; BANKPLUS WEALTH
MANAGEMENT, LLC; GEE GEE
PATRIDGE, VICE PRESIDENT AND CHIEF
OPERATING OFFICER OF BANKPLUS;
STEWART PATRIDGE; JASON COWGILL;
MARTIN MURPHREE; MUTUAL OF
OMAHA INSURANCE COMPANY; and
MUTUAL OF OMAHA INVESTOR
SERVICES, INC.**                                                      **DEFENDANTS**

**MUTUAL OF OMAHA INVESTOR SERVICES, INC.'S
<u>MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

**I.      INTRODUCTION**

The Receiver seeks to hold Mutual of Omaha Investor Services, Inc. ("MOIS") liable for debts incurred by Madison Timber Properties, LLC ("MTP") and Lamar Adams long after Stewart Patridge and Martin Murphree were no longer registered representatives of MOIS. While the Complaint contains 47 paragraphs that pertain specifically to the other Defendants, it contains only seven paragraphs regarding MOIS, all of which are conclusory allegations and none of which move the claims from possible to plausible.  Indeed, *Iqbal* and *Twombly* are designed to bring an immediate end to complaints like the instant Complaint.

The Complaint is barred under the doctrine of *in pari delicto*.  MOIS had no knowledge of the scheme and obtained no benefit from the scheme.  To allow the perpetrator of the scheme (Adams) and his instrument (MTP) to recover against MOIS would pervert justice.  MOIS

cannot be held vicariously liable for the actions of Patridge and Murphree because, according to the Complaint, they were at all times acting for their own benefit in furtherance of the business of MTP and Adams, and not MOIS. The Receiver's claim for negligent retention and supervision fails because MOIS did not owe such duties to MTP and Adams and they certainly did not believe Patridge and Murphree were acting with authority from MOIS. Moreover, the Complaint does not adequately plead causation. The Receiver does not allege facts specific to MOIS which would make claims for civil conspiracy and aiding and abetting (assuming there is such a cause of action in Mississippi) plausible on their face. Finally, all of the Receiver's claims are barred because the Fifth Circuit has rejected the deepening insolvency theory of damages.

## II. THE STANDARD OF REVIEW

This Court set forth the legal standard for a Rule 12(b) (6) motion:

Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of an action that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b) (6). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations as true and makes all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The plaintiff's complaint "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 677-68 (quotation marks in citation omitted). The plaintiff's claim need not include "detailed factual allegations," but the complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id* at 678 (quotation marks and citation omitted). The plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Iqbal*, 566 U.S. at 678). Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's "emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that Plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 803 n.4 (5th Cir. 2011).

*Blackledge on behalf of J.B. v. Vicksburg-1 School District*, 2017 WL 4679456, at *1 (S. D. Miss.). Although a complaint is a notice pleading, "plaintiffs cannot simply file anything and call it a complaint. See. Fed. R. Civ. P. 8(a). A plaintiff's complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Peterson Indus., Inc. v. Hol-Mac Corp.*, 2011 WL 577377, at *1 (S. D. Miss.) (citations omitted)

### III.     THE ALLEGATIONS OF THE COMPLAINT

The Receiver's Complaint is 36 pages long with 147 numbered paragraphs as well as additional numbered paragraphs. Paragraphs 5 - 13 set forth the parties while paragraphs 14 - 26 set forth background information regarding MTP that is similar to, if not identical to, other complaints filed by the Receiver. Paragraphs 27 - 74 contain allegations entitled "BankPlus" broken into sub-categories. Those sub-categories are "The introduction" (¶¶ 28 - 32), "A Madison Timber headquarters in DeSoto County" (¶¶ 33 - 37), "A 'referral' from BankPlus in Jackson" (¶¶ 38 - 42), "A handoff with assistance from BankPlus" (¶¶ 43 - 55), "Red flags" (¶¶ 56 - 58), "BankPlus's knowledge" (¶¶ 59 - 71), and "BankPlus's silence" (¶¶ 72 - 74).

The allegations pertaining to MOIS are comprised of only seven paragraphs (¶¶ 75 - 81) and are threadbare conclusory allegations with no specific factual allegations other than that Patridge and Murphree were at one time registered representatives of MOIS. Against MOIS, Plaintiff asserts four counts.[1] For each of those four counts, the receiver "re-alleges each of the foregoing paragraphs as those stated fully herein." In each of the four counts, the allegations are levied against all "Defendants." In each count, the Receiver bases her claims upon "the numerous red flags described in this complaint," even though none of the "red flags" are alleged

---

[1] Those counts are (1) civil conspiracy, (2) aiding and abetting, (3) recklessness, gross negligence and negligence, and (4) negligent retention and supervision.

3

as to MOIS. Nowhere does the Receiver plead facts specific to MOIS from which the Court could infer a plausible claim. The Receiver also claims vicarious liability of "Mutual of Omaha" and that MOIS is the alter ego of Mutual of Omaha Insurance Company.

### IV. ARGUMENT

#### A. The Receiver's Claims are Barred by *In Pari Dilecto*.

*1. The Law.*

"The doctrine of *in pari delicto* provides that wrongdoers are to bear the consequences of their wrongdoing without legal recourse against each other." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012). The doctrine is "an equitable, affirmative defense, which is controlled by state common law." *Id*. The doctrine bars recovery by one joint tortfeasor against another joint tortfeasor if they are *in pari delicto*. *Sneed v. Ford Motor Co.*, 735 So. 2d 306, 309 (Miss. 1999). Therefore, application of the doctrine depends upon who is making the claim, who is asserting the defense, and the nature of the claim.

The Fifth Circuit finds its footing on this issue, as do most other circuits, in *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995). *Scholes* recognized an exception to the application of the doctrine. In *Scholes*, the Seventh Circuit allowed the receiver to proceed on behalf of the corporate entity against third party recipients of the corporate entity's assets under the uniform fraudulent transfer law. It allowed the receiver to proceed based upon the Seventh Circuit's distinction between the bad actor for the corporation from the corporation itself. *Scholes*, 56 F.3d at 754-55. *Scholes* held that once the bad actor, the person *in pari delicto*, is removed, "the doctrine loses its sting." *Id.* However, the *Scholes* exception to the doctrine is limited.

The Seventh Circuit put a fence around the exception in *Knauer v. Johnathan Roberts Financial Group, Inc.*, 348 F.3d 230 (7th Cir. 2003) and dismissed the claims based upon *in pari*

4

*delicto*. In *Knauer*, the receiver brought an action on behalf of an investment company against broker dealers alleging violations of state and federal law. In *Knauer*, the court recognized the case before it presented "a different equitable alignment." *Id.* at 237. It further stated:

> The key difference, for purposes of equity, between fraudulent conveyance cases such as *Scholes* and the instant case is the identity of the defendants. The receiver here is not seeking to recover the diverted funds from the beneficiaries of the diversions (e.g. the recipients of Douglas's transfers in *Scholes*). Rather this is a claim for tort damages from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence.

*Id*. In addition to lack of direct involvement and lack of benefit to the broker-dealer, *Knauer* noted that the liability arose solely from the agency relationship between the investment company and the defendants and that the dealer defendants also had agency relationships with the corporate entities represented by the receiver. *Id*. Like *Scholes*, the Seventh Circuit's analysis in *Knauer* has been followed by the majority of the courts to address the issue.[2]

2. *The Balancing of the Equities Favors Application of In Pari Dilecto.*

The equitable considerations set forth in *Knauer* are applicable here. The Complaint admits MTP and Adams come to the table with unclean hands. (¶¶ 22 & 117) The Complaint does not allege that MOIS received any benefit from the fraud. Like in *Knauer,* all of the alleged liability arises from the agency relationship between MOIS and the alleged wrongdoers. And, like in *Knauer*, Patridge and Murphree were agents for MTP and Adams and all alleged wrongdoing by Patridge and Murphree was in furtherance of the business of MTP and Adams.

---

[2] *See, e.g., Ogle v. Bennett*, 2012 WL 2567139, at *3, n.5 (N.D. Tex.) (in Fifth Circuit and majority of circuits *in pari dilecto* operates as an affirmative defense to a claim's merits); *Janvey v. Adams and Reese, LLP*, 2013 WL 12320921, at *3 n.4 (N.D. Tex.)(noting that "public policy calculus might differ based on the particular claim pursued" and citing *Knauer*); *Hays v. Pearlman*, 2010 WL 4510956, at *7 (D. S. C.)(following *Knauer*, court applied *in pari dilecto* because receiver sought tort damages from third party that derived no benefit from Ponzi scheme) *Myatt v. RHBT Fin. Corp.*, 695 S.E. 2d 545, 548 (Ct. App. S. C. 2006)(balancing the equities and applying *in pari dilecto* to receiver's claims.)

The Court's application of *in pari delicto* in the instant action serves public policy. It is consistent with Mississippi law in bringing about an equitable result. Moreover, if the Receiver is permitted to pursue these claims, MOIS could be subjected to double liability and excessive fines if investors are allowed to bring their own claims and *res judicata* does not bar their claims. On the other hand, if the investor's claims are barred, then they risk losing their ability to plead harm specific to their circumstances. Moreover, it prohibits punishment of an innocent third party[3] who received no benefit from the Ponzi scheme for losses incurred by investors none of whom are alleged to have had a relationship with MOIS.

   3.   *Scholes Rationale Does Not Apply to Claims Brought by the Estate of Adams.*

In *Scholes*, the rationale for an exception to *in pari delicto* was because the corporate entity had been "purged" of the wrongdoer. Here, Adams is the wrongdoer and there is no rational basis to allow the Estate of Adams to proceed against MOIS for tort claims.

**B.   MOIS is not Vicariously Liable for the Alleged Acts of Patridge and Murphree.**

The Receiver's allegations fall far short of Rule 12(b)(6) pleading requirements. First, the allegations themselves are allegations of a mere possibility because the Receiver claims only "apparent" backing enabled Patridge and Murphree to assist Madison Timber in its unlawful business and not *actual* backing. Neither here nor in ¶¶ 75 – 81 does she plead any facts from which the Court could infer "backing" by MOIS. She also pleads vicarious liability for other possible *unnamed* persons. ("Defendant Mutual of Omaha is liable for the negligent and reckless acts of their agents, including *but not limited to*….") (¶ 146) Such hardly meets the pleading requirements of Rule 12(b)(6).

---

[3] Though not in the four corners of the Complaint, Defendant Murphree well stated, "neither Mutual of Omaha nor any of these other insurance companies had any connections or dealings with Madison Timber." [Dkt. #35, p. 3] Indeed, the Complaint alleges no direct connection or dealings with MTP.

Proper application of vicarious liability requires analysis of the precise conduct at issue. A principal cannot be liable for tortious acts of its agent unless committed in the course and scope of his agency and in furtherance of the principal's business. *Booth v. S. Hens, Inc.*, 244 So. 3d 888, 890 (Miss. Ct. App. 2018). Federal and state courts are "reluctant to find broker-dealers vicariously liable for the underhanded dealings of registered representatives in circumstances similar to the case *sub judice*." *FSC Securities Corp. v. McCormack*, 630 So.2d 979, 985 (Miss. 1994).

In *FSC*, plaintiff-investor sued the registered representative ("RR") who converted the investor's funds for his own use.

> The record clearly indicates that Manuel as well as FSC Securities' other registered representatives act within the scope of employment only when soliciting or transacting business in securities approved for sale by the broker-dealer. As a member firm of the NASD, FSC Securities is required to supervise and control those securities transactions made by its registered representatives which are cleared through the broker-dealer. *We find the evidence does not support the Chancellor's finding that Manuel was an agent of FSC Securities Corporation. It is clear Manuel was acting outside the scope of his representative status with FSC,* and further that the McCormacks had notice, although they might have ignored it, that Manuel was acting for Financial Services Limited, not FSC.

*Id*. at 986 (emphasis added).

In *Morgan v. MML Investors Services, Inc.*, 226 So. 3d 590 (Miss. Ct. App. 2017), plaintiff brought suit against Mass Mutual and others because one of its RR lost money on a sports bet and on a loan that was never repaid. The court rejected the plaintiff's claim that Mass Mutual business cards and transacting business in the RR's office established apparent authority to conduct the questioned transactions on behalf of Mass Mutual. In affirming summary judgment, the Court of Appeals held that the actions of the RR were "for a purpose of his own and not in service of his employer's interest." *Id*. at 595. The court further held that the RR was not clothed with apparent authority because there was no conduct by Mass Mutual to

7

suggest the RR was authorized to sell investment contracts of a materially different type. *Id*. at 597-98.  *See also Cover v Cushing Capital Corp.*, 497 A. 2d 249, 598-99 (Pa. Super. 1985) (broker-dealer not vicariously liable to investors for conversion by RR because no actual or apparent authority to sell commercial paper); *Barnes v SWS Fin. Serv., Inc.*, 97 Sw. 3d 759, 764 (Ct. of App. Tex. 2003) ("If the registered representative was selling products outside the markets to which the registered representative had access by reason of his relationship with the broker-dealer, the representative was acting outside the broker-dealer's control and the broker-dealer was not subject to control person liability.").

Although the Receiver fails to state a plausible claim that Patridge and Murphree committed any wrongs for which MOIS could be vicariously liable, assuming they did commit torts, such conduct was outside the actual and apparent authority of their agency.  The Receiver does not allege that MTP or Adams believed that Patridge and Murphree were acting on behalf of MOIS; does not allege that that MOIS had knowledge of their selling away; does not allege the unregistered securities sold by MTP and Adams were offered by MOIS or processed through an MOIS custodial account; and does not allege any conduct by MOIS conveying apparent authority.  *See FSC Securities*, 630 So. 2d at 985 (apparent authority involves conduct of *principal* rather than that of the plaintiff).  The Receiver pleads no facts from which one could infer that MTP and Adams were carrying out the business of MOIS or acting for the benefit of MOIS.  ***The acts of Patridge and Murphree alleged in the Complaint were in furtherance of the business of MTP and Adams and not MOIS:***  "Stewart saw in Madison Timber a money-making opportunity for *himself*." (¶ 31) (emphasis added) "In exchange for his recruitment of new investors to *Madison Timber*, Kelly agreed to pay [Patridge]…." (¶ 31) (emphasis added) "Although Stewart and Murphree were agents of Mutual of Omaha, they relied on their

affiliations with BankPlus, and BankPlus's resources…." (¶ 33) "Cowgill himself was largely administering Stewart's Madison Timber business with BankPlus customers." (¶ 47) All commissions were paid directly from Madison Timber to Patridge and Murphree. (¶ 56) "Patridge and Murphree, as agents of Mutual of Omaha, substantially *assisted Madison Timber's growth* by recruiting new investors to Madison Timber." (¶ 78) (emphasis added)

In short, the Receiver does not plead facts sufficient to state a plausible claim to hold MOIS vicariously liable for the alleged conduct of Patridge and Murphree.

**C.    The Receiver Fails to State a Claim for Negligent Retention and Supervision.**

Although the Receiver may bring claims on behalf of the estates for which she was appointed receiver, she may do so only "provided that the entity has a claim against the defendant in question." *Janvey v. Alguire*, 847 F.3d 231, 241 (5th Cir. 2017). Thus, the Receiver does not step into the shoes of the investors. *See Janvey v Democratic Senatorial Campaign Committee, Inc.*, 712 F. 3d 185, 190 (5th Cir. 2013) ("a federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors"). She may only bring a claim if MTP or Adams could bring the claim. Count VI fails for at least five reasons.

*First*, MOIS does not owe to MTP and Adams a duty of supervision and retention. *See Chickaway v. United States of America*, 2012 WL 2222848, at *1 (S. D. Miss.) ("familiar elements of any negligence claim are duty, breach, causation, and damages."). Although such duties may be owed to other persons or entities, they are not owed to MTP and Adams. MOIS had no contractual or other duty to MTP or Adams that would impose upon MOIS a duty to MTP or Adams to supervise or retain. *Second*, "Mississippi law requires the presence of an employer-employee relationship to assert a claim of negligent retention." *In Re Evans*, 467 B.R. 399, 408

(S.D. Miss. 2011). The Complaint does not allege (and they were not) that Patridge and Murphree were employees of MOIS. She alleges only that they were "… registered investment advisor and registered broker … and possibly an ordinary agent …." (¶¶ 76 & 77).

*Third*, even when such a duty exists, there must be "specific evidence of an employer's actual or constructive knowledge of the tortious tendencies in order to create a genuine issue of material fact on a supervision theory of liability." *Holmes v. Campbell Properties, Inc.*, 47 So. 721, 720 (Miss. 2010); *see also Myles v. Domino's Pizza, LLC*, 2015 WL 2092689, at *4, (N.D. Miss.) ("put differently, plaintiff has failed to plead any facts which would allow the court to draw an inference, much less a reasonable inference, that Domino's knew James was an 'incompetent' driver."). Like the plaintiff in *Myles*, the Receiver has failed to plead any facts specific to MOIS that MOIS had actual or constructive knowledge of Patridge or Murphree's alleged misconduct. *Fourth*, a duty to supervise, if it exists, "does not include a duty to uncover its [agent's] concealed, clandestine, personal activities." *Baker Donelson, Bearman, Caldwell & Berkowitz, PC v. Seay*, 42 So. 3d 474, 489 (Miss. 2010); *see also Scafide v Bazzone*, 962 So. 2d 585, 596 (Miss. 2006) (finding no duty to aid one in peril and no duty to prevent future harm); *Cover*, 497 A. 2d at 254 (no duty to discover "fraudulent machinations in which Fugh was involved outside the scope of his employment").

*Finally*, the Receiver fails to plead proximate cause. The Receiver seeks to hold MOIS liable for MTP and Adams' actions long after Patridge and Murphree were no longer affiliated with MOIS. The Complaint alleges their affiliations ended in 2013 and 2014, respectively. (¶¶ 76 & 77) On the one hand, the Complaint alleges that "Defendants contributed to Madison Timber's success over time, and therefore to the Receivership Estate's liabilities today." (¶¶ 92,

10

101, 111, 126, and 135)  On the other hand, the debts of the estates were incurred in the "last year of operation." (footnote 1)

Proximate cause requires two elements: (1) cause in fact, or a direct injury and (2) legal cause. *Holmes*, 47 So. 3rd at 725.  Legal cause addresses whether the result of the negligent act is reasonably foreseeable.  *Id*.  "Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred."  *Delahoussaye v Mary Mahoney's, Inc.*, 783 So. 2d 666, 671 (Miss. 2001).  There must be a "direct relation between the injury asserted and the injurious conduct alleged.  Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover."  *Holmes v. Securities Investor Prot. Corp.*, 112 S. Ct. 1311, 1318 (1992) (cited favorably in *Owens Corning v R.J. Reynolds Tobacco Co.,* 868 So. 2d 331, 339 (Miss. 2004)).  The Receivership Estate's liabilities only exist as a function of the losses by third parties, the investors.  That is, the injury she claims merely flows from the misfortunes visited upon a third party.[4]  Moreover, even if there were a direct injury, the harm to MTP and Adams was not reasonably foreseeable.

> D. **The Receiver's Fails to State a Claim for "Recklessness, Gross-Negligence and at a Minimum Negligence."**

The Receiver misstates what constitutes negligence and recklessness by leaving out the element of duty.  As stated above, MOIS must have a duty to MTC and Adams.  In Count III, the Receiver does not allege the duty that was owed by MOIS to MTP or Adams or how that duty was breached.   For that reason alone, Count III should be dismissed.  And, it should be dismissed for all the reasons set forth above regarding negligent retention and supervision.

---

[4] Indeed, the lack of proximate causation applies to every cause of action asserted by the Receiver.

E.  **The Receiver Fails to State a Claim for Civil Conspiracy.**

"A claim for civil conspiracy requires clear and convincing evidence of (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the Plaintiff as a proximate result." *Harris v. Town of Woodville*, 196 So. 3d 1121, 1131 (Miss. Ct. App. 2016) "[F]or a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. 2013).

The Receiver does not plead any facts specific to MOIS as to the existence of an agreement between it and Adams and MTP. She alleges no overt act by MOIS committed in furtherance of the conspiracy.[5] Instead, she re-alleges and incorporates 74 paragraphs that have nothing to do with MOIS. The Receiver makes only conclusory allegations regarding MOIS being in an "advantageous position to discover that Madison Timber was a fraud" and a legal conclusion of a "duty to supervise its agents." (¶¶ 75 – 81) But, as stated above, MOIS owed no such duties to MTP and Adams. Moreover, such allegations are conclusory and even if true do not constitute an agreement or an overt act.

F.  **The Receiver Fails to State a Claim for Aiding and Abetting.**

The Court should dismiss this count first, because "no Mississippi court has recognized a claim for civil aiding and abetting, whether under § 876(b) or § 876(c)." *In Re Evans*, 467 B.R. at 409; *see also Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011) ("The Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of

---

[5] Although in ¶ 88, the Receiver identifies 7 ostensible overt acts in furtherance of a civil conspiracy, none of those overt acts pertain to MOIS. MOIS did not recruit new investors, receive commissions, serve as a reference, lend their offices, facilitate the financial transactions, make payments to and from recruiters, or make loans.

12

action…."). "Thus rather than existing as an independent cause of action, Mississippi appears to treat aiding and abetting as a theory for imposing liability against the defendant for an underlying tort." *Myles*, 2015 WL 2092689, at *4.  Even if the Mississippi Supreme Court had recognized such a cause of action, the Receiver has not pled facts sufficient to make the claim plausible.

Under the Restatement (Second) of Torts § 876(b), a defendant may be liable if she (1) knows that the other's conduct constitutes a breach of duty and (2) gives substantial assistance or encouragement to the other to breach that duty.   The Receiver does not plead the duties breached by Adams and Kelly.   The Receiver attempts to obscure the lack of plausibility by burying this claim in a vague, conclusory allegation of "duties owed by them to Madison Timber and other tortious conduct alleged in this complaint." (¶ 97)

As with her claim of civil conspiracy, the Receiver pleads no facts specific to MOIS that would establish MOIS' "knowledge" that the "other's" conduct constituted a breach of duty. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (allegation that person "knew" of fraud is legal conclusion); *Metro Bank of Dallas*, 522 F. 2d 84, 95 (5th Cir. 1975) ("A remote party must not only be aware of his role, but he should also know when and to what degree he is furthering the fraud.").  Here too, she references "the numerous red flags described in this complaint," but those "red flags" described in the complaint are all allegations specific to other Defendants. Moreover, "red flags" are not sufficient to satisfy the requirement of knowledge of the tort. *See Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993-4, 996 (11th Cir. 2014) ("red flags" or suspicious activity not sufficient to constitute knowledge and complaint must allege facts sufficient to go beyond "red flags"); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2nd Cir. 2006) (while knowledge of red flags may have put bank on notice of some impropriety, it was not sufficient to create inference of actual knowledge); *Litson-Greunber v. JP Morgan*

*Chase & Co.*, 7:09-cv-056-0, 2009 U.S. Dist. Lexus 117749, at *5-8 (N.D. Tex. Dec. 16, 2009) (allegation that defendant knew or should have known insufficient to state claim for aiding and abetting).

Finally, the Receiver alleges no facts specific to MOIS as to how it gave substantial assistance or encouragement to Adams and Kelly.  Whether a defendant's actions constitute substantial assistance and encouragement is a question of law.  *Edwards & Hanly v Wells Fargo Securities Clearance Corp.,* 602 F. 2d 478, 484 (2nd Cir. 1979).  In paragraphs 98 & 99, she references red flags, lending influence, lending professional services, lending customers and providing office space.  These are conclusory allegations that do not pertain to MOIS and in any event do not constitute substantial assistance or encouragement as a matter of law.  *See, e.g., Edwards & Hanly,* 602 F. 2d at 485 (inadequate supervision is not substantial assistance because could only harm principal); *Kolbeck v. LIT America, Inc.,* 939 F. Supp. 240, 247 (S.D.N.Y. 1966) (inaction or failure to supervise does not constitute actionable participation unless defendant owes a fiduciary duty directly to plaintiff); *DePinto v Ashley Scott, Inc.* 635 N.Y.S. 2d 215, 217 (1st Dep't 1995) (holding that allowing third party to use office space does not rise to level of substantial assistance).

### G. The Fifth Circuit Has Rejected the Deepening Insolvency Theory of Damages.

"Deepening insolvency has been defined as prolonging an insolvent corporation's life through bad debt, causing the dissipation of corporate assets." *In Re SI Restructuring, Inc.*, 532 F. 3d 355, 363 (5th Cir. 2008).  The Complaint alleges that but for the actions and omissions of the Defendants, the debts of the receiver would not have grown creating a deeper insolvency.  The Fifth Circuit rejected this as "a valid theory of damages."  *Id.*  The rationale for rejecting it is that it "looks at the issue through hindsight bias." *Id.* (quoting *In Re CitX Corp.*, 448 F. 3d 672,

677 (3d Cir. 2006)); *see also Balestri v Hunton & Williams, LLP*, 2013 Bankr. LEXIS 5691, at *30) (Bankr. N.D. Tex. Nov. 18, 2013) (rejecting claim for diminution in value as the same as theory of deepening insolvency). The Receiver's theory of damages in the instant action is the same as deepening insolvency. Through hindsight bias, she seeks to hold MOIS liable for debts incurred long after Patridge and Murphree were associated with MOIS. For failure to state a valid claim for damages, the Complaint should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Mutual of Omaha Investor Services, Inc., moves the Court to dismiss all claims against it with prejudice, or, in the alternative, partial dismissal.

This, the 3rd day of June, 2019.

Respectfully submitted,

**MUTUAL OF OMAHA INVESTOR SERVICES, INC.**

By: *s/Kelly D. Simpkins*
Kelly D. Simpkins (MSB #9028)
Their Attorney

OF COUNSEL:

WELLS MARBLE & HURST, PLLC
300 Concourse Boulevard, Suite 200
Ridgeland, Mississippi 39157
Post Office Box 131
Jackson, Mississippi 39205-0131
Telephone:   601-605-6900
Facsimile:   601-605-6901
ksimpkins@wellsmar.com

/269159