IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALYSSON MILLS, IN HER CAPACITY AS
RECEIVER FOR ARTHUR LAMAR ADAMS
AND MADISON TIMBER PROPERTIES LLC                           PLAINTIFF

VS.                                         CIVIL ACTION NO. 3:19-00196-CWR-FKB

BANKPLUS ET AL.                                                DEFENDANTS

## JASON COWGILL'S REBUTTAL BRIEF
## IN SUPPORT OF HIS MOTION TO DISMISS

### I.       Introduction

The Receiver asks the Court to (1) ignore necessary elements of one cause of action against Cowgill; (2) invent another; (3) ignore that Cowgill does not owe a duty to warn or protect, or that Madison Timber and Lamar Adams cannot bring a claim rooted in their own illegality; and (4) declare Cowgill's payments from Kelly Management as fraudulent transfers. What remains true is that the Receiver is incapable of pleading Cowgill had actual knowledge a fraud was afoot; there is no such thing as civil aiding and abetting in Mississippi; Cowgill owed no duty to warn or protect; Madison Timber and Lamar Adams' claims are barred because they are rooted in their own illegal acts; even if the payments Cowgill received were transfers, they are protected because he was a good-faith transferee; and *in pari delicto* applies under Mississippi law. Cowgill properly established that the Receiver failed to state a claim against him upon which relief could be granted. Interestingly, Receiver tries to avoid the fact that Cowgill was without any knowledge or cause for suspicion that Madison Timber or Lamar Adams was defrauding investors. Either of these points, standing alone, is sufficient for the Court to dismiss the claims against him. Receiver's attempt to create a factual dispute is futile where dismissal is warranted.

## II.      Argument and Law

**A.      Civil Conspiracy requires knowledge and an unlawful, common purpose; the Receiver shows neither.**

In light of the loose interpretation in Receiver's response, a restatement of the mandatory elements of a civil conspiracy is in order. "To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, **and** (4) damages to the plaintiff as a proximate result." *Orr v. Morgan*, 230 So. 3d 368, 375 (Miss. Ct. App. 2017) (citations, brackets, and ellipsis omitted) (emphasis added).

*i.      Receiver's hedging demonstrates inability to show Cowgill knew about a Ponzi scheme.*

The Receiver continues to hedge the civil-conspiracy claim, asserting that Cowgill either knew or should have known about the Ponzi scheme, and makes vague references to facts known by "the Defendants" without specifying what alleged facts were allegedly known by Cowgill [Doc. 54; pp. 3, 11].[1] This is not the standard. Civil conspiracy requires "aware[ness] of the fraud or wrongful conduct at the beginning of the agreement." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). Because there clearly was no such awareness on the part of Cowgill, Receiver chooses to double down on alleged "red flags," but still fails to indicate how Cowgill knew about any of these red flags—Cowgill is not even mentioned in a single one. [Doc. 54, p.13]. Receiver cannot, in good faith, allege the required actual knowledge by Cowgill, which is crippling to this claim. *Litson-Gruenber v. JPMorgan Chase & Co.*, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (dismissing claims in a Ponzi-scheme case because "pleading based on an allegation the defendant 'knew or should have known' is insufficient" for actual knowledge);

---

[1] This has been Plaintiff's tack throughout this lawsuit, especially in regard to Cowgill.

*Neilson v. Union Bank of California, N.A.*, 2003 WL 27374137, at \*10 (C.D. Cal. Feb. 20, 2003). Even if the Receiver had alleged actual knowledge, a bare assertion of knowledge is a legal conclusion, which does not suffice to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      ii.    *The common purpose must be unlawful.*

Receiver also asserts that a conspiracy arises from a "'mere tacit understanding between the conspirators to work to a common purpose.'" [#54, p.11] (quoting *Aetna Ins. Co. v. Robertson*, 94 So. 7, 22 (Miss. 1922)). But the common purpose must be unlawful. *See id.*; *Harris v. Town of Woodville*, 196 So. 3d 1121, 1131 (Miss. Ct. App. 2016). Allegedly recruiting investors and facilitating deposits are simply not unlawful [Doc. 54, pp. 11-12]; and an agreement to do that, tacit or otherwise, is not a conspiracy. Thus, Cowgill cannot have been part of some civil conspiracy.

      iii.    *The Mississippi Supreme Court's recent decision has not altered the civil-conspiracy claim.*

Receiver relies heavily on the Mississippi Supreme Court's recent opinion, *Rex Distrib. Co. Inc. v. Anheuser-Busch LLC*, 2019 WL 2223661 (May 23, 2019),[2] to suggest that only the presence of damages is necessary for a valid civil-conspiracy claim, and apparently to suggest that Cowgill did not need to agree to an **<u>unlawful</u>** overt act to be part of a conspiracy. [Doc. 54, pp. 9-11]. A simple reading of *Rex* belies Receiver's assertions. An agreement is still required, and damages alone are not enough. *Rex*, at \*8 (¶36) ("[A] conspiracy requires an agreement between the co-conspirators[;]" "the persons must agree in order for a conspiracy to exist"). Further, the agreement must be to "accomplish an unlawful purpose or to accomplish a lawful purpose

---

[2] *Rex*, at \*8 (¶34), cites wholesale to *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004), which is the foundation case for *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). *Bradley* and *Jeffcoat* are cited by both Receiver and Cowgill, [Doc. 54, p.9; Doc. 41, p.2]. There is nothing groundbreaking about the law in *Rex*.

unlawfully." *Id*. Receiver fails to show Cowgill agreed to defraud anyone or that he had any knowledge or suspicion of Madison Timber's nefarious ends. Receiver's failure to demonstrate any of these necessary elements warrants dismissal of this claim against Cowgill.

**B.     There is no such thing as civil aiding and abetting in Mississippi, and Plaintiff admits that.**

Receiver concedes that no Mississippi state court has ever recognized a civil "aiding-and-abetting" action [Doc. 54, p.18]. Receiver cites to other jurisdictions that either recognize the action or have speculated that Mississippi would do so. *Id*. But even those jurisdictions require knowledge that another is breaching a duty. Restatement (Second) of Torts § 876(b). Receiver seems to suggest that, because Cowgill knew of Lamar Adams, Wayne Kelly, and Madison Timber, somehow that translates into the huge leap that Cowgill knew that Adams was breaching a fiduciary duty. Receiver's Complaint is bereft of any proof of knowledge of a breach and does not provide a sufficient basis to allege the requisite knowledge.

**C.     Cowgill does not owe Lamar Adams or Madison Timber a duty to prevent their Ponzi scheme, and Mississippi does not allow claims rooted in illegal acts.**

Receiver asserts Cowgill owed Madison Timber a duty to prevent it from conducting a Ponzi scheme, but that is not the law in Mississippi. *Higginbotham v. Hill Bros. Constr. Co. Inc.*, 962 So. 2d 46, 56 (¶24) (Miss. Ct. App. 2006) (cert. denied, 962 So. 2d 38 (Miss. 2007) (Mississippi adheres "to section 314 of the Restatement (Second) of torts, which states that 'the fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.'").

Further, Adams and Madison Timber certainly cannot claim a duty owed <u>to them</u> since they were the <u>perpetrators</u> of the illegal conduct. *See Downing v. City of Jackson*, 24 So. 2d 661, 663 (Miss. 1946) ("The principle of public policy is that no court will lend its aid to a party who

grounds his action upon an immoral or illegal act."); *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484-85 (¶13) (Miss. 2006). Because there is no duty, nor would the Court allow recovery based on one, Receiver's negligence claims warrant dismissal.[3]

      **D.    Cowgill is entitled to the good-faith-transferee defense.**

Even if Cowgill's payments from Kelly Management fell under the Mississippi Fraudulent Transfer Act, which they do not,[4] a good-faith transferee is entitled to retain any interest in the asset transferred, a reduction in the amount of the liability on the judgment, or enforcement of any obligation incurred. Miss. Code Ann. § 15-3-113 (Rev 2006). Though Mississippi courts have not interpreted the meaning of a "good-faith transferee" to date, the Fifth Circuit has addressed the issue in relation to Texas' version of the UFTA. "A party takes an asset . . . in good faith if the party (1) had no actual notice of the fraudulent intent of the debtor and (2) lacked knowledge of such facts as would cause a person of ordinary prudence to question whether the debtor had fraudulent intent." *Janvey v. GMAG LLC*, 925 F.3d 229, 233 (5th Cir. 2019) (quoting *Tex. Pattern Jury Charges—Bus., Consumer, Ins. & Emp't* § 105.29 (2016 ed.)) (ellipsis in the original).

As noted above and in Cowgill's Memorandum Brief supporting his Motion to Dismiss [Doc. 41], he did not know of any fraud. Regarding the inquiry notice of the second element, if anything, the facts known to Cowgill removed any doubt that there might have been any fraud[5]: one of Cowgill's personal friends invested in Madison Timber and the same friend's family sold

---

[3] Failure of Plaintiff's negligence claims further necessitate dismissal of the civil-conspiracy claim because they serve as the underlying tort for the civil-conspiracy claim.

[4] *See In re First Commercial Mgmt. Grp. Inc.*, 279 B.R. 230, 239-40 (N.D. Ill. 2002) (Trustee unable to recover commissions paid to broker by Chapter 7 debtor in pay-telephone Ponzi scheme since broker received commissions for value and in good faith; broker gave value, or consideration, to debtor by locating investors, broker performed his services without any knowledge that debtor's activities were fraudulent, or that debtor was operating a Ponzi scheme, and commissions paid to broker for locating investors for debtor were within range of commissions earned by other brokers for performing similar services in pay-telephone industry).

[5] It remains to be seen whether Mississippi's UFTA would require an inquiry notice as no Mississippi court has addressed the question.

timber to Madison Timber [Doc. 39, p.5]; Cowgill thought that Madison Timber related activities were sanctioned by his employer's CFO/COO [Doc. 39, pp.8, 10]; Cowgill thought documents were prepared by various well-respected law firms [Doc. 39, p.9]; Cowgill's employer's CFO/COO was a Madison Timber investor herself [Doc. 39, p. 10]; the CFO/COO's son worked with Madison Timber investments [Doc. 39, p. 10]; Cowgill's employer used Madison Timber promissory notes as collateral or an income source for loans [Doc. 39, p. 10]; and, perhaps most importantly, Cowgill verified the existence of timber deeds dozens of times with land records available via the internet and at least one time over the phone with a court's land records office [Doc. 39, p. 11].[6] Given all of those facts, none of which Receiver challenges, there is no possibility that a person of "ordinary prudence" would have suspected a fraud. As such, even if he were found to be a transferee, he is statutorily entitled to the good-faith-transferee defense which allows him to retain interest in the payments he received from Kelly Management.

**E.    *In pari delicto* does bar Receiver's claims.**

The case of *Jones v. Wells Fargo Bank N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) cited by Receiver does not hold that the "innocent successor" exception applies throughout the Fifth Circuit—that is Receiver's addition. The Fifth Circuit was quoting the rule from a series of Texas state court cases. *See Jones*, 666 F.3d at 966 (quoting *Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E–Court, Inc.*, 2003 WL 21025030, at *5 (Tex.App.—Austin 2003); *Guardian Consumer Fin.*

---

[6] Receiver cherry-picks and misquotes unremarkable facts from Cowgill's Answer [Doc. 39] about his daily activities and admits they are (1) outside the four corners of the Complaint, and (2) "of the kind [he was] employed to perform." [Doc. 54; pp. 6-7, n.22]. Cowgill references the above unchallenged facts of his Answer so that the Court may have the full picture. Though reliance on Cowgill's Answer is not necessary for his Motion to Dismiss, "[t]he [C]ourt is not limited to the four corners of the Complaint" and is within its bounds to consider "items appearing in the record of the case" "without converting [his] motion into one for summary judgment." 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice Procedure</u> § 1357 (3d ed. April 2019 Update); *see also Meyers v. Textron Inc.*, 540 Fed. Appx. 408, 409 (5th Cir. 2013).

*Corp. v. Langdeau*, 329 S.W.2d 926, 934 (Tex.Civ.App.—Austin 1959, no writ)). The Fifth Circuit

did so because "[t]he rights of a receiver are determined by state law." *Jones*, 666 F.3d at n.11.

In Texas, a receiver who is appointed "in a dual capacity, as a trustee for both the

stockholder and the creditors," can act "as trustee for the creditors" without limitation of the

defenses to which the corporation would be subject. *Langdeau*, 329 S.W.2d at 934.[7] In *Jones*, "the

district court specifically authorized the Receiver to pursue actions for the benefit of "'all investors

who may be the victims of the fraudulent conduct[.]'" 666 F.3d at 966.

Receiver was appointed to stand in the shoes of Madison Timber and Lamar Adams, not

Madison-Timber investors. Consistent with Mississippi law, the Court furnished Receiver with

"all powers, authorities, rights, and privileges now possessed by the officers, managers, and

interest holders of and relating to the Receivership Defendants" and ordered Receiver to "pursue .

. . their claims." [Doc. 33, p. 5], *SEC v. Adams*, 3:18-cv-252 (S.D. Miss.). A receiver suing on an

estate's behalf "occup[ies] substantially the same relation which was occupied by the original

parties" and "[a]ny defense . . . which a defendant might have made to an action brought by the

original party is equally available" against the receiver. High on Receivers § 205 (2d Ed.); *see*

*Cashin v. Murphy*, 96 So. 747, 749 (Miss. 1923) (citing High). Receiver is thus similarly situated

to the plaintiffs in the many recent cases that rejected innocent-successor claims brought by

trustees and receivers who claimed that their appointment cleansed the wrongdoer's estate of *in*

*pari delicto*. [#41, pp.11-12]. Receiver has failed to identify a single Mississippi case that exempts

a receiver from the same defenses applicable to the corporation. As with the "aiding and abetting"

---

[7] Thus, "[t]he Fifth Circuit, when applying Texas law, seems to hold the view that when a receiver is protecting innocent creditors or recovering assets for investors and creditors, the defense of *in pari delicto* should be rejected generally." *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921, at *3 (N.D. Tex. Sept. 11, 2013) (emphases added).

claim, Receiver asks the Court to invent Mississippi law supporting this position, further underscoring the need for dismissal against Cowgill.

### III.   Conclusion

Receiver's claims against Cowgill are premised entirely upon hindsight bias. But even then, Receiver ignores Cowgill's efforts to verify the legitimacy of the transactions at issue and, only then, involving his close, close personal friends in investments made by countless well-respected Mississippians. The flaws in Receiver's Complaint are incurable: (1) Receiver cannot show the required elements of civil conspiracy; (2) aiding and abetting is not a claim; (3) Cowgill did not owe a duty to warn or protect Madison Timber or Lamar Adams from their own Ponzi scheme, nor can they bring a tort rooted in their own illegal activity; (4) even if Cowgill's payments somehow were transfers, Cowgill is entitled to the good-faith-transferee defense; and (5) *in pari delicto* bars Receiver's claims. As such, the Complaint warrants dismissal as to Cowgill.

Dated: June 27, 2019.

Respectfully submitted,

JASON COWGILL, ONE OF THE
DEFENDANTS

BY:   *s/ Wilton V. Byars, III*
          OF COUNSEL

WILTON V. BYARS, III - BAR # 9335
wbyars@danielcoker.com
J. MILES FORKS - BAR # 105080
mforks@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
265 NORTH LAMAR BOULEVARD, SUITE R
POST OFFICE BOX 1396
OXFORD, MISSISSIPPI 38655-1396
TELEPHONE: (662) 232-8979
FACSIMILE: (662) 232-8940