**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ALYSSON MILLS, IN HER CAPACITY AS
RECEIVER FOR ARTHUR LAMAR
ADAMS AND MADISON TIMBER
PROPERTIES, LLC,**

    **Plaintiff,**

vs.                                                                       **CIVIL ACTION NO.
3:19-cv-00196-CWR-FKB**

**BANKPLUS; BANKPLUS WEALTH
MANAGEMENT, LLC; GEE GEE
PATRIDGE, VICE PRESIDENT AND
CHIEF OPERATING OFFICER OF
BANKPLUS; STEWART PATRIDGE;
JASON COWGILL; MARTIN
MURPHREE; MUTUAL OF OMAHA
INSURANCE COMPANY; AND MUTUAL
OF OMAHA INVESTOR SERVICES, INC.,**

    **Defendants.**

**GEE GEE PATRIDGE'S REPLY IN SUPPORT OF HER MOTION TO DISMISS**

COMES NOW Defendant, Gee Gee Patridge, by and through undersigned counsel, and files her Reply in further support of her Motion to Dismiss.

**I.**     **The Receiver has not stated a claim for civil conspiracy.**

    **A.**     **The Receiver does not plead an underlying intentional tort for civil conspiracy.**

In her Response, the Receiver identifies, "recklessness, gross negligence and at a minimum, negligence" as the underlying torts in her claim against Gee Gee Patridge for civil conspiracy. Doc. 54 at 17. However, **parties cannot conspire to be negligent**. Conspiracy is an intentional tort. "Thus, civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong and because negligence is, by definition, not an intentional

1

wrong, the parties cannot engage in civil conspiracy to be negligent." 16 Am. Jur. 2d *Conspiracy* § 51 (2009).

To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result. *Gallagher Bassett Servs.*, 887 So. 2d at 777, para. 37 (Miss. 2004); *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, ¶14 (Miss. Ct. App. 2007); *see also* 16 Am. Jur. 2d *Conspiracy* § 51 (2009). In *Triplex*, the plaintiffs proposed a jury instruction on civil conspiracy which stated that, "'unlawful means' may include negligence or the violation of a statute or law." *Triplex Communications v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). The trial court and the Supreme Court of Texas rejected this instruction stating, that it, "would have improperly eliminated the intentional or knowing aspects of civil conspiracy." *Id*. at 719. "This definition is also erroneous because it permitted the jury to find that the parties conspired to be negligent. Given the requirement of specific intent, parties cannot engage in civil conspiracy to be negligent." *Id*. at 720 n 2. *See also Marlin v. Moody Nat'l Bank, N.A.*, 248 Fed. Appx. 534, 540, (5th Cir. 2007)(one cannot agree or conspire to act in a negligent manner); *Wooley v. Lucksinger*, 61 So. 3d 507, 601 (La. 2011)(citing *Triplex* with approval, stating, "[g]iven the requirement of specific intent, parties cannot engage in a civil conspiracy to be negligent").

The Receiver has not pled that Gee Gee Patridge conspired to commit an underlying intentional tort, and therefore, has failed to assert an essential element of her claim. The Complaint does not state a claim for civil conspiracy against Gee Gee Patridge and this cause of action should be dismissed.

### B.   The Receiver has not pled that Gee Gee Patridge had knowledge of the fraud or agreed to participate in the fraud.

The Receiver states that damages, as opposed to agreement, are the essence of civil conspiracy. This does not negate the fact that knowledge of and agreement to an unlawful purpose are essential elements of a claim for civil conspiracy. "While 'damages are the essence of a civil conspiracy' . . . Still, an agreement between the parties must be established." *Bradley v. Kelley Bros. Contrs., Inc.*, 117 So. 3d 331, 339 (Miss. App. 2013)(citing 15A C.J.S. *Conspiracy* § 7 (2012)).

The Receiver states, "Mississippi law holds that a conspiracy can be formed by a 'mere tacit understanding between the conspirators to work to a common purpose.' *Aetna Ins. Co. v. Robertson*, 94 So. 7, 22 (1922)." Doc. 54 at 11. However, it is not sufficient to have an understanding and a common purpose. The understanding and common purpose must be unlawful and the person accused must know of and agree to the unlawful purpose at the beginning of the agreement. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968). In order to sufficiently plead conspiracy, the Receiver must plead facts to show there was an agreement to accomplish the unlawful purpose and that Gee Gee Patridge was aware of the unlawful purpose at the beginning of the agreement. *Bradley*, 117 So. 3d at P32 (citing 16 Am. Jur. 2d *Conspiracy* § 51(2009)). In *Triplex* the court disagreed with the plaintiff's argument that the tortfeasors needed only to intend to engage in the conduct that resulted in the injury. *Triplex Communications v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). The court stated, "civil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination of agreement." *Id.* at 719.

The Receiver does not sufficiently plead that Gee Gee Patridge agreed to the unlawful purpose, which is an essential element of civil conspiracy. Even if there was an agreement to recruit (which there was not) and an underlying unlawful purpose, Gee Gee was unaware of the Ponzi scheme and the Receiver has not pled facts, circumstantial or direct, to show otherwise.

The Receiver cites to the district court ruling in *Midwest Feeders*, in which the district court denied the bank's motion to dismiss a claim for civil conspiracy, finding that the circumstantial evidence alleged by the plaintiff was sufficient to create a factual inquiry regarding a civil conspiracy. Doc. 54 at 12 (citing *Midwest Feeders, Inc. v. Bank of Franklin*, 114 F. Supp. 3d 419 (Miss. S.D. 2015)). However, the circumstantial evidence supporting claims against a bank in *Midwest Feeders* is more substantial than the allegations against Gee Gee Patridge. In *Midwest Feeders* the complaint alleged that the fraudster, "invoked his Fifth Amendment right against self-incrimination when questioned under oath 'whether he gave anything of value to any employee, officer, or director of Bank of Franklin as part of his scheme.'" *Id.* at 429-430. In contrast, Gee Gee Patridge is not alleged to have received a benefit from the alleged tortious conduct.

The Receiver claims it is sufficient that she has alleged that the defendants "knew or should have known" based on "red flags." Doc. 54-12-13. However, concluding that Gee Gee Patridge had actual knowledge of fraud would require piling inference upon inference based on the "red flags" that were available to all investors. The Receiver claims that the Complaint "does not rely on red flags alone." Doc. 54 at 13. But, the additional allegations regarding alleged knowledge cited by the Receiver pertain to BankPlus. Doc. 54 at 13-16. The Receiver does not explain how any allegations against Gee Gee Patridge, other than the red flags, allegedly show actual knowledge of fraud.

**II.     The Receiver has not stated a claim for aiding and abetting.**

The Receiver attempts to distinguish *In re DePuy* from this case in that the Texas Supreme Court in *In re DePuy* expressly stated that it had not decided whether Texas law recognizes a cause of action for aiding and abetting. Doc. 54 at 18 n 47. (citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liability Lit.*, 888 F. 3d 753, 781 (5th Cir. 2018)). Yet, the Receiver does not dispute that Mississippi state courts have never recognized this cause of action. Doc. 54 at 18.

In declining to create a common law cause of action that did not exist in Texas, the Fifth Circuit stated, "We have long followed the principle that we will not create 'innovative theories of recovery or defense' under local law, but will rather merely apply it 'as it currently exists.'" *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995)(citing *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1217 (5th Cir.1985)) (stating, "we remain mindful of our role in the system; it is not for us to adopt innovative theories of recovery or defense for Texas law, but simply to apply that law as it currently exists"). No cause of action exists in Mississippi for aiding and abetting, and the Receiver's claims against Gee Gee Patridge for aiding and abetting should be dismissed.

**A.  The Receiver fails to plead actual knowledge and agreement.**

Even assuming that a claim for aiding and abetting exists under Mississippi law, the Receiver has not pled facts to show that Gee Gee Patridge knew that Madison Timber was a Ponzi scheme and that she knowingly gave substantial assistance or encouragement to breaches of duties. The Restatement Second states that, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct

constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts, § 876(b) (Am. Law Inst. 1979).

The Receiver alleges that by recruiting investors, defendants aided and abetted Lamar Adams and Wayne Kelly in breaching fiduciary duties Adams and Kelly owed to Madison Timber as manager and principal of the company. Doc. 54 at 19-20. The Receiver's claims fail because she has not pled sufficient facts to show that Gee Gee Patridge knew that Adams' and Kelly's conduct constituted a breach of any alleged duty.

The Receiver cites *Proskauer Rose* for the proposition that awareness of unrealistic rates of return supports knowledge for aiding and abetting purposes. Doc. 54 at 21. In *Proskauer Rose* the defendant attorney accused of aiding and abetting and civil conspiracy represented the perpetrator of the Ponzi scheme during the SEC's investigation into the wrongdoing. *Janvey v. Proskauer Rose*, No. 3:13-CV-0477-N, 2015 U.S. Dist. LEXIS 187809 (N.D. Tex. June 23, 2015). The defendant attorney allegedly made misrepresentations to the SEC that obstructed the investigation. *Id*. at *3. The defendant attorney was alleged to have "conducted substantial due diligence" on the perpetrator of the Ponzi scheme and "became aware" that regulators were not independent from him. *Id*. at *16. The circumstances which supported "actual knowledge" for aiding and abetting and civil conspiracy claims in *Proskauer Rose*, are clearly more substantial than the "red flags" pled by the Receiver.

The Receiver claims that *El Camino* does not apply here. Doc. 54 at 20-21. However, in *El Camino* "red flags" associated with an account were insufficient to show the bank had actual knowledge of fraud. Gee Gee Patridge cites multiple cases in her memorandum in which courts held that "red flags" are insufficient for pleading actual knowledge of fraud. Doc. 34 at 11. The

Receiver does not explain how any allegations against Gee Gee Patridge, other than the red flags which were available to all investors, allegedly show actual knowledge of fraud.

### B. The Receiver fails to plead substantial assistance.

The Receiver cites to *Breazeale* for the proposition that allegations that a law firm referred clients to a Ponzi scheme support a "reasonable inference" of substantial assistance. Doc. 54 at 20. The allegations against the lawyers in *Breazeale* were much more egregious than what is alleged against Gee Gee Patridge. The allegations against the lawyers in *Breazeale* arose out of their legal representation of a fraudulent company in a Ponzi scheme. *Official Stanford Inv'rs Comm. v. Breazeale Sachse & Wilson, LLC*, No. 3:11-cv-0329 (N.D. Tex. March 24, 2015). In *Breazeale* the class plaintiffs alleged that the lawyers, with knowledge that the fraudulent company lacked sufficient security for its clients' investments, continued to assist the company in establishing trust production offices; assisted in hiding the fraudster's wrongful conduct from Louisiana regulators by delivering fraudulent ghost written letters from Antiguan regulators; and referred their other clients to the fraudster's company. *Id*. at 18. The court concluded that, "these allegations **and others**, when construed in a light most favorable to the Class Plaintiffs, establish a reasonable inference of substantial assistance." *Id*. at 18 (emphasis added).

The deceptive conduct alleged in *Breazeale* contrasts with the allegations against Gee Gee Patridge. The Receiver alleges Gee Gee Patridge helped Kelly "recruit" investors and "facilitated" investments of another investor. Compl. ¶38-39. Gee Gee Patridge never sold any Madison Timber investments and never received any commissions related to Madison Timber investments. The Complaint does not allege otherwise.

The Receiver alleges that in 2013 Gee Gee Patridge told Wayne Kelly she would, "be 'glad' to serve as a 'referral contact' for new potential investors." Compl. ¶39-40. The Receiver alleges that in 2013 Gee Gee Patridge told another investor that she was also an investor. Compl. ¶40. The Receiver alleges Gee Gee Patridge was on a "referral list" prepared by Adams and Kelly. Compl. ¶40-42. However, Gee Gee did not give her permission to be on a referral list, nor was she aware of such a list; and the Complaint does not allege otherwise.

Even taking the allegations in the Complaint as true, the allegations do not amount to substantial assistance in a Ponzi scheme.

### III. The Receiver fails to plead a duty owed by Gee Gee Patridge to Adams and Madison Timber, and therefore, fails to state a claim for negligence, gross negligence, and recklessness.

The Receiver cites to Mississippi Code Annotated Section 75-3-103, claiming that it imposes a duty upon banks. While this argument may apply to banks, it does not apply to individuals such as Gee Gee Patridge. Nevertheless, Gee Gee Patridge addresses the argument because the Receiver claims, without any supporting authority, that, "These same principles apply to all Defendants . . ." Doc. 54 at 26. Mississippi Code Annotated Section 75-3-103, titled "definitions" defines "ordinary care," as the term is used within the chapter of the Uniform Commercial Code. The statute itself does not actually impose a duty of ordinary care, but only provides the definition of "ordinary care" as it is used throughout the chapter of the Uniform Commercial Code. The Receiver does not cite any statutes within the Uniform Commercial Code or elsewhere that would support a duty of ordinary care owed by Gee Gee Patridge to Madison Timber and Lamar Adams. The Receiver cites to *Delta Chem. & Petroleum*, which discusses whether the defendants acted in a reasonable commercial manner regarding conversion claims

8

under Mississippi Code Annotated Section 75-3-419(3). The Receiver has not alleged conversion claims against Gee Gee Patridge and *Delta Chem. & Petroleum* is not applicable to this case.

The Receiver cites to Mississippi Code Annotated Section 11-7-20, stating that privity is not a requirement in a negligence action. Doc. 54 at 15. However, "The demise of the defense of privity removes only a formalistic barrier to recovery." *Hosford v. McKissack*, 589 So. 2d 108, 110 (Miss. 1991). It does not expose "defendants to liability to the whole world." *Id.* at 110. "The door opened by the demise of privity is limited by more realistic inquiries into foreseeability and detrimental reliance." *Id.* at 110. The Receiver has not pled facts showing that Lamar Adams and Madison Timber, in whose shoes she stands, detrimentally relied on Gee Gee Patridge or that they were foreseeable plaintiffs. The Receiver is also not relieved of the burden of establishing a duty owed by Gee Gee Patridge, which the Receiver has failed to do.

The Receiver cites to *Greenberg Traurig* in claiming that Gee Gee Patridge owed a duty of ordinary care to Madison Timber and Lamar Adams, "the underlying fiduciary duties on which Plaintiffs' claims are based are those owed by directors and officers of the Stanford Financial Group to their respective Stanford entities." Doc. 54 at 24, 26 n.75 (citing *Official Stanford Investors Committee, et al., v. Greenberg Traurig, LLP, et al.*, No. 3:12-cv-04641-N-BQ, 2014 U.S. Dist. LEXIS 190621, at *20 (N.D. Tex. Dec. 17, 2014)). However, the quote from *Greenberg Traurig* cited by the Receiver is referring to a receiver's claims against attorneys who represented fraudulent companies for aiding and abetting officers' and directors' breaches of fiduciary duties owed to the companies. The Receiver does not explain how this case would support the incorrect assumption that an individual such as Gee Gee Patridge owed an ordinary duty of care to a company and its manager.

The Receiver cites the following from *Clausell*: "In the context of an ordinary negligence action the duty of care is the requirement to conform to a specific standard for the protection of others against the unreasonable risk of injury . . . ." Doc. 54 at 24, 26 (citing *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. App. 2015)). This only states what a duty is. It does not explain what duty Gee Gee Patridge would have owed to Madison Timber and Lamar Adams. The Receiver simply concludes, without any authority, that all defendants owed this ordinary duty of care to Madison Timber and Lamar Adams. Doc. 54 at 23, 26. There is no authority to support the Receiver's conclusion that an ordinary duty of care was owed by Gee Gee Patridge to Madison Timber and Lamar Adams. Gee Gee Patridge did not owe a duty to Madison Timber and Lamar Adams, and the Receiver gives no authority to show otherwise.

The Receiver cites to *Midwest Feeders* and *Chang*, claiming that although the general rule is that banks do not owe duties to non-customers, courts have applied an exception to this rule where the customer owed a fiduciary relationship to the non-customer. Doc. 54 at 26. While this argument may apply to banks, it does not apply to individuals such as Gee Gee Patridge. Nevertheless, Gee Gee Patridge addresses the argument because the Receiver claims, without any supporting authority, that, "These same principles apply to all Defendants . . . ." Doc. 54 at 26.

First, the Fifth Circuit recognized that the exception to the general rule that banks do not owe duties to non-customers does not exist in Mississippi. *Midwest Feeders, Inc., v. Bank of Franklin*, 886 F.3d 507, 519 (5th Cir. 2018). The Fifth Circuit declined to apply the exception stating, "we cannot use our *Erie* guess to impose upon Mississippi a new regime of liability for its banks." *Id*. at 519. In affirming summary judgement for the bank, the court stated, "Given the

10

current state of Mississippi's case law . . . we do not predict that the Mississippi Supreme Court would impose upon [the bank] a duty of reasonable care to Midwest, a non-customer." *Id*. at 519.

Even if Mississippi recognized such an exception, which it does not, the exception would still not apply here. The exception cited by the Receiver requires the Receiver to prove that the bank knew or should have known of the fiduciary relationship and that the bank have "actual knowledge" that "a diversion is to occur or is ongoing." *Midwest Feeders, Inc.,* 886 F.3d at 518 (citing *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219 (5th Cir. 2010)). *See also Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094-1095 (11th Cir. 2017). As discussed in the sections above regarding civil conspiracy and aiding and abetting, the allegations in the Complaint are insufficient to show Gee Gee Patridge had actual knowledge of any wrongdoing.

Also, the circumstances described in *Midwest Feeders* and *Chang* involved a customer owing a fiduciary duty to a plaintiff who was an innocent, third-party, non-customer. The Receiver here is alleging that Kelly and Adams are the bank customers who owed fiduciary duties to Madison Timber, the non-customer, who is not an innocent third party. Doc. 54 at 26. *Midwest Feeders* acknowledges that even in jurisdictions where the exception is applied, "A bank could also defend itself on the grounds that the non-customer was comparatively negligent." *Midwest Feeders*, 886 F. 3d at 519 (citing *Burton by Bradford v. Barnett*, 615 So. 2d 580, 582 (Miss. 1993)). The exception cited by the Receiver does not support imposition of a duty to a non-customer under the circumstances of this case.

The Receiver does not cite any authority that would impose a duty owed by Gee Gee Patridge to Madison Timber and Lamar Adams. The Receiver has failed to meet her burden of establishing the existence of a duty owed by Gee Gee Patridge to Adams and Madison Timber;

11

and therefore, Gee Gee Patridge is entitled to a judgment as a matter of law as to the claims for negligence, gross negligence, and recklessness.

### IV.     The affirmative defense of *in pari delicto* bars the Receiver's claims against Gee Gee Patridge.

The Receiver erroneously states that Gee Gee Patridge does not explain why, "Mississippi courts would look to courts in the Seventh Circuit, New York, or South Carolina for guidance. . ." and does not explain why "Mississippi courts would reject the Fifth Circuit's rationale in virtually identical cases." Doc. 54 at 46. The Receiver ignores that on pages 12 through 14 of Gee Gee Patridge's Memorandum in support of her Motion to Dismiss [Doc. 34], she explains that the Fifth Circuit cases on which the Receiver relies are not "identical," and she explains why the rationale in the South Carolina, New York, and Seventh Circuit cases is applicable here.

First, the following cases on which the Receiver relies apply Texas and Illinois state law in declining to apply *in pari delicto* to fraudulent transfer and conversion claims brought by a receiver. In those cases the courts distinguished between a corporation and an individual such that the individual wrongdoer stood *in pari delicto*, but the wrongdoer's company did not. *See Jones v. Wells Fargo Bank, N.A.*, 666 F. 3d 955 (5th Cir. 2012); *Janvey v. Democratic Senatorial Campaign Comm., Inc.,* 712 F. 3d 185, 191 (5th Cir. 2013); *Scholes v. Lehman*, 56 F. 3d 750, 752 (7th Cir. 1995). These cases do not involve the type of tort claims brought by the Receiver against Gee Gee Patridge, and the rationale in these cases is not universally accepted, especially outside of the fraudulent conveyance context. *Janvey v. Adams & Reese, LLP*, No. 3:12-CV-0495-N, 2013 U.S. Dist. LEXIS 202981 (N.D. Tex. Sept. 11, 2013). Also, the Receiver's claims are brought on behalf of Madison Timber and Lamar Adams. There is no distinction here

12

between Lamar Adams and Madison Timber such that *in pari delicto* would bar Adams' claims, but not bar Madison Timber's claims. *See* Doc. 34 at 12-14.

The second set of cases on which the Receiver relies involve defendants who were receiving a benefit from the wrongdoing. Doc. 34 at 14. *Official Stanford Investors Committee, et al., v. Greenberg Traurig, LLP, et al.*, No. 3:12-cv-04641-N-BQ, 2014 U.S. Dist. LEXIS 190621 (N.D. Tex. Dec. 17, 2014); *Janvey v. Willis of Colo., Inc.*, No. 3:12-CV-3980-N, 2014 U.S. Dist. LEXIS 183344, *5-6, *13-15 (N.D. Tex. Dec. 5, 2014); *Janvey v. Adams & Reese, LLP*, No. 3:12-CV-0495-N, 2013 U.S. Dist. LEXIS 202981 (N.D. Tex. Sept. 11, 2013). The Receiver does not allege that Gee Gee Patridge benefitted from the Ponzi scheme as a result of the alleged torts. Thus, the rationale in these cases does not apply to the claims against Gee Gee Patridge, and the defense of *in pari delicto* should apply.

In contrast, the Seventh Circuit and South Carolina have applied the *in pari delicto* defense in tort actions brought by the receiver against third parties who were not alleged to have received a benefit from the tortious conduct. Doc. 34 at 12-14. *See Hays v. Pearlman*, No. 2:10-CV-1135-DCN, 2010 U.S. Dist. LEXIS 116803 (D.S.C. Nov. 2, 2010); *Knauer v. Jonathan Roberts Financial Group*, 348 F.3d 230 (7th Cir. 2003). New York has also declined to adopt any exceptions to the application of *in pari delicto*, even in difficult cases. *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010)(citations omitted).

The Receiver claims that public policy considerations weigh in favor declining to apply the *in pari delicto* defense. Doc. 54 at 46-47. The Receiver cites to *Morrissey*, which recognizes there may be limitations to the *in pari delicto* defense in cases involving illegal contracts contrary to public policy. *Morrissey v. Bologna*, 123 So. 2d 537, 543 (Miss. 1960). The opinion states that equity may aid a party in the recovery of money paid or property delivered in

13

performance of the illegal contract. *Id*. at 543. However, there is no illegal contract here, and Gee Gee Patridge is not alleged to have received a benefit from the alleged tortious conduct. The public interest is not served by holding an innocent individual responsible for the fraud perpetrated by Lamar Adams and Madison Timber. The interest of innocent stakeholders in the fraud should not trump the interest of innocent outside professionals. *Kirschner*, 938 N.E.2d at 958.

Based on the authority cited above and in Gee Gee Patridge's Memorandum in Support of her Motion to Dismiss [Doc. 34], Gee Gee Patridge respectfully requests the Court dismiss with prejudice Counts I, II and III, of the Complaint against her for civil conspiracy, aiding and abetting, negligence, gross negligence, and recklessness.

Respectfully submitted this, the 28th day of June, 2019.

**GEE GEE PATRIDGE**

 /s/  *Robert P. Thompson*
ROBERT P. THOMPSON

OF COUNSEL:

ROBERT P. THOMPSON, MSB #8188
LAURA W. GIVENS, MSB. #104189
McAngus, Goudelock and Courie, LLC
P. O. Box 2955 (39158)
1020 Highland Colony Parkway, Suite 706
Ridgeland, Mississippi 39157
(601) 427-7511
(601) 510-9525 (Fax)
bobby.thompson@mgclaw.com
laura.givens@mgclaw.com

JAY M. ATKINS, MSB #100513; TN #21371
McAngus, Goudelock and Courie, LLC
119 North 9th Street
Oxford, Mississippi 38655
(662) 281-7828
(662) 259-8460 (Fax)
jay.atkins@mgclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of Court using the ECF system which sent notifications of service to all counsel of record.

This the 28th day of June, 2019.

    /s/ *Robert P. Thompson*
ROBERT P. THOMPSON

15