| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC, | Case No. 3:19-cv-196 CWR-FKB |
| Plaintiff, | Arising out of Case No. 3:18-cv-252, *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC* |
| v. | Hon. Carlton W. Reeves, District Judge |
| BANKPLUS; BANKPLUS WEALTH MANAGEMENT, LLC; GEE GEE PATRIDGE, VICE PRESIDENT AND CHIEF OPERATING OFFICER OF BANKPLUS; STEWART PATRIDGE; JASON COWGILL; MARTIN MURPHREE; MUTUAL OF OMAHA INSURANCE COMPANY; and MUTUAL OF OMAHA INVESTOR SERVICES, INC., | |
| Defendants. | |

## BANKPLUS' REPLY TO RECEIVER'S OPPOSITION TO ITS MOTION TO DISMISS

Defendants BankPlus and BankPlus Wealth Management LLC ("BankPlus") together reply to Receiver's Opposition to their Motion to Dismiss.

## PRELIMINARY STATEMENT

The Complaint and Opposition reflect a profound misunderstanding of the federal regulatory filing scheme for banks, present an inaccurate timeline of events, misinterpret case law to rewrite tort elements and pleadings standards, and conflate arguments regarding employee acts outside the scope of their employments with routine-transaction arguments. The Complaint fails to provide the particulars required for its claims—the "who, what, when, and where"—and the Opposition presents little defense to BankPlus' arguments in this regard.  Finally, *in pari delicto* defeats the Complaint's tort claims because the "innocent successor" doctrine the Complaint invokes is limited to fraudulent-transfer claims.

{N3842807.1}

## ARGUMENT

**I.    The Opposition Distorts BankPlus' Filings.**

Bank regulatory filings lie at the heart of this matter. They are the means by which banks comply with requirements to report potential fraudulent activity to federal authorities. As BankPlus explained previously, federal law criminalizes the unlawful disclosure or discussion of many types of these filings. For that reason, BankPlus cannot fully defend itself in public filings against the Complaint and Opposition without also subjecting itself to criminal liability.

The Opposition, as with the Complaint, takes advantage of a misunderstanding about banking regulations to distort the timeline and to make it seem BankPlus conspired with Madison Timber. The opposite is true. BankPlus repeatedly reported its suspicions that Madison Timber was a fraud to the proper authorities.

Using the means available to it under the relevant financial services industry regulations, BankPlus reported that Madison Timber was engaging in a possible fraud on April 8, 2015. BankPlus made this filing after investigating a customer complaint in January 2015, and during the investigation BankPlus discovered facts sufficient under the regulations to report Madison Timber's potential fraud. The Complaint and Opposition attempt to muddle this timeline by asserting that these communications evidence BankPlus' knowledge that Madison Timber was a fraud "as early as 2009." Opp. pp. 3, 13, 16, 20. This Complaint provides no factual support for this statement and appears to use the confidentiality of banking regulations on reporting fraud to create a narrative that BankPlus aided Madison Timber in its scheme. Insinuating that BankPlus discovered Madison Timber was a fraud, but did nothing until the scheme's April 2018 collapse, misrepresents facts: BankPlus reported the fraud in 2015.[1]

---

[1] The Opposition states the quoted string of communications took place "**by** 2015" when it should state "**in** 2015": each of the statements that follow are from 2015 and relate to the investigation and submission of a

The Complaint's Paragraph 66 best sums up its tortured attempt to create a fictional timeline: "[n]otwithstanding these findings, BankPlus did nothing to curb Madison Timber's reliance on BankPlus to facilitate the financial transactions…that masked Madison Timber's insolvency."   In other words: disregarding that BankPlus investigated customer accusations against Madison Timber, and disregarding that BankPlus reported its Madison Timber concerns to federal authorities in the manner federal regulations prescribe, BankPlus did nothing to stop Madison Timber.

The Opposition's quotation at p. 15 of Complaint Paragraph 65 worsens the situation when it omits that BankPlus filed the document, making it appear BankPlus consciously disregarded the "findings" of its Bank Secrecy Act Officer.   These were not "findings" and they did not lie forgotten in BankPlus files before this case.   BankPlus reported its Madison Timber concerns to the Federal Government in April 2015 (and on multiple occasions afterwards).

The Complaint and Opposition's "as early as" sentence illustrates the need for the Federal Rules of Civil Procedure's requirement of particularity for fraud allegations.   Without regarding the heightened particularity its claims require, the Complaint is free to rearrange and quote selectively from documents. The Complaint transforms records of BankPlus' investigation and reports of fraud into causes of action that charge BankPlus with knowledge of and complicity in the fraud.

Instead the opposite is true.   The quotes with which the Complaint assails BankPlus reflect BankPlus' diligence, not negligence.   BankPlus did not bury its head in the sand; BankPlus reported the potential of illegal activity by Madison Timber to federal authorities.   BankPlus continued its cooperation when it produced records to the Receiver without any obligation to do so.   For its efforts BankPlus faces public, distorted recrimination that it can only fully counter under court seal.

---

confidential regulatory filing, but the Opposition obscures their true time and purpose. *See* Compl. ¶ ¶ 61-64; *cf*. Opp. pp. 3, 20.

Fraud's heightened pleading standard in Federal Rule of Civil Procedure 9(b) requires the Complaint to plead "the circumstances constituting fraud. . . with particularity," setting forth "the who, what, when, and where. . . before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Without these particulars, BankPlus must waste its limited discovery opportunities to obtain this information, information already owed to it under the Federal Rules. For instance, the Complaint alleges Stewart Patridge recruited investors to Madison Timber during his BankPlus employment, but provides no particulars as to whom he recruited or when.[2]

## II.   The Opposition Conflates Scope, Knowledge Arguments.

The Complaint's allegations regarding vicarious liability for and negligent supervision of its employees rest on either (1) acts falling outside the scope of the individuals' employment, or (2) routine banking services that do not create vicarious liability in the absence of facts demonstrating actual knowledge of wrong-doing. The Opposition conflates these concepts. Opp. p. 6.

The Opposition attacks BankPlus' reliance on the *Seay* decision and suggests the case has limited persuasive authority because it involved a workplace love affair. *Id.* But the Opposition does not address the cases dismissing claims for negligent supervision when employees allegedly engaged in Ponzi schemes and criminal conduct outside the scope of employment. See Memorandum of Law in Support of BankPlus' Motion to Dismiss ("Mem.") at 18-19 (citing *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013); *Holmes v. Campbell Properties, Inc.*, 47 So. 3d 721, 729 (Miss. Ct. App. 2010); *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953 (5th Cir. 1994)).

---

[2] The Complaint provides a statement from one investor at Paragraph 73, but states that she met Stewart Patridge in 2012—months after Stewart left BankPlus in August 2011. See Mem., Ex. D, Stewart's brokerage and advisor registrations filed with the SEC and FINRA.

The Opposition also ignores the role of knowledge in the *Rotstain* case, cited three times for the proposition that routine banking services can constitute substantial assistance. *Rotstain v. Trustmark Nat'l Bank*, 2015 WL 13034513, cited at Opp. pp. 7, 12, 22. This overlooks the required element of actual knowledge in addition to substantial assistance. In that Stanford-Ponzi case, plaintiff alleged the institutions handled a much larger volume of Stanford's transactions, knew all Stanford's funds in the banks were proceeds from CD sales to Stanford's customers, and knew Stanford transferred a large portion of these proceeds into his personal bank accounts and another portion to a fraudulent Antiguan auditor—all despite regulatory warnings concerning the Antiguan finance industry. *Rotstain* at 24-25.[3] Through those allegations, the plaintiff raised a reasonable inference of both knowledge of Stanford's underlying wrongdoing and a specific agreement to facilitate the fraudulent conduct. *Id*. Furthermore, the plaintiff alleged the institutions provided discretionary brokerage services to Stanford and thus had "discretionary investing and fiduciary authority," and so stated a valid claim against the financial institutions for breach of fiduciary duty. *Id*. at 26. Considered together with these allegations, the financial institutions' routine banking services constituted substantial assistance.

The Complaint here does not allege facts similar to *Rotstain's* to create a reasonable inference of knowledge or a specific agreement to facilitate fraud. Without that knowledge, routine banking services are not substantial assistance. *See Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (applying Florida law in Ponzi case, bank providing "only routine banking services" could not be liable without "actual knowledge" of fraudulent activities, and holding informal endorsements of scheme by bank's "Premier Banking Division" were insufficient

---

[3] Pagination from original order.

to establish bank's participation in scheme and "more easily [] interpreted to demonstrate Bank of America's **lack** of awareness") (Emphasis added).[4]

### III.    Lack of Alleged Knowledge Defeats Civil Conspiracy Claims.

The Opposition likewise misinterprets civil conspiracy case law to rewrite tort elements and pleading standards.  At page ten, for instance, the Complaint quotes a recent Mississippi Supreme Court decision that distinguishes civil and criminal conspiracy theory, for the proposition because damages are the "essence" of civil conspiracy, by alleging damages the Complaint states a cause of action.  Compared to criminal conspiracy, damages are indeed the "essence" of civil conspiracy—but this does not remove the other elements of civil conspiracy the Complaint must allege, including knowing agreement.

In the same fashion, the Opposition suggests that because the law does not require it to allege an overt act by every conspirator, it similarly does not require the Complaint allege each conspirator's knowledge. Opp. pp. 10-11. But as the Complaint's cited cases acknowledge, the Complaint must still show BankPlus "**agreed to** and participated in Lamar Adams' and Wayne Kelly's course of action." *Id.*, p. 10. (Emphasis added, brackets omitted).  Agreement requires knowledge, which the Complaint does not adequately allege.

Likewise the Opposition at p. 12 offers that because circumstantial evidence may establish civil conspiracy, this somehow absolves the Complaint from alleging knowledge with the particularity the law requires. The law permits a party to state claims with circumstantial evidence, true, but that circumstantial evidence must still allege all the elements of a party's claims. *Cook v. Wallot*, 172 So. 3d 788, 801 (Miss. App. 2013) (upholding dismissal of ex-soldier's conspiracy

---

[4] Additionally, the Complaint and Opposition incorrectly imply, if not assert outright, that BankPlus' knowledge should be imputed to its employees—*i.e.*, that all the Individual Defendants had knowledge of both the April 2015 regulatory filing and the March 2009 email.  Imputation is not a two-way street.

claim against military order for wrongful expulsion, despite presence of circumstantial evidence, where complaint alleged "no factual basis for any agreement whatsoever" among defendants).

## IV.    The Complaint Fails to Provide Particulars for Racketeering Claims.

The Opposition does not dispute BankPlus' contention that wire fraud can only serve as a predicate act under Mississippi's anti-racketeering laws if the alleged wire fraud occurred after July 1, 2014.  Mem. at 24-25. This Court should therefore dismiss the Complaint's racketeering claims because it identifies no alleged wire fraud(s) after July 1, 2014, fails to provide particulars, and lacks allegations of knowledge.

The Opposition disputes that the Complaint must satisfy Rule 9(b)'s heightened pleading standard and asserts its claims do not involve fraud:

> In fact, the complaint does not allege BankPlus is liable for fraud; neither fraud nor scienter are elements of the Receiver's claims. "Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated."

Opp. pp. 4-5, quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).  The quoted *Lone Star Ladies* language in context, however, holds the opposite:

> Rule 9(b) applies by its plain language to **all averments of fraud, whether they are part of a claim of fraud or not**. It does not follow, however, that Rule 9(b) or *Melder* justifies dismissing a 1933 Act claim when, disregarding the deficient allegation of fraud, a claim is stated. Rather, Rule 9(b) insists that "all averments of fraud . . . shall be stated with particularity." The price of impermissible generality is that the averments will be disregarded.
>
> Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.

*Id.* (Emphasis added) (Ellipsis in original).

The Complaint offers no particulars of any post-July 2014 wire fraud. Which customers did Stewart and Murphree allegedly recruit or attempt to recruit during their BankPlus employment? When did Kelly, Stewart, or Murphree recruit Cowgill to their alleged fraud—before or after Kelly decided to pay Stewart's alleged commissions to him? Who led Cowgill to believe Gee Gee "blessed" any arrangement between Madison Timber and BankPlus? When did BankPlus customers "drop off" new Madison Timber contracts at the Southaven branch? RICO Case Statements answer these questions and the Court should require one here so BankPlus does not waste its resources or limited discovery opportunities seeking information already owed to it.

Further, the Opposition's statement that "neither fraud nor scienter are elements of the Receiver's claims" is demonstrably false. Indeed, the Opposition at pp. 33-34 appears to concede that wire fraud does involve fraud and scienter—both of which the Complaint must allege with particularity because wire fraud is the predicate act for its racketeering claims. Likewise, civil conspiracy and aiding and abetting both require knowledge. Mem. at 9-13, 15-16.

## V.    "Innocent Successor" Doctrine Does Not Apply To Tort Claims.

The Complaint cannot escape the *in pari delicto* defense ("IPD") by resorting to the Innocent Successor doctrine adopted by the Seventh Circuit in *Scholes v. Lehman,* 56 F.3d 750 (7th Cir. 1995) (applying Illinois law); *Janvey*, 712 F.3d at 191(discussing *Scholes* and applying Texas law). This is so because the Fifth Circuit and most courts limit the doctrine to fraudulent-transfer cases and decline to extend it to receivers' tort claims. *Janvey v. Democratic Senatorial Campaign Comm., Inc*, 712 F.3d at 191 (claims against "recipients of the entity's assets that have been fraudulently transferred"); *Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014) (receiver standing to pursue fraudulent transfers grounded in text of statute); "*Scholes* is not universally accepted, especially outside the fraudulent transfer context," *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921, 2013 U.S. Dist. LEXIS 202981 (N.D. Tex. Sep. 11, 2013) at *3. Indeed, even the

Seventh Circuit which popularized the concept limits its application to fraudulent-transfer claims. *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012) (applying IPD to claims by bankruptcy trustee for Ponzi scheme against third-party auditor); *Knauer v. Jonathon Roberts Fin. Grp., Inc*., 348 F.3d 230 (7th Cir. 2003) (*Scholes* cleansing unavailable for tort claims against third parties who received no payments from fraudulent scheme). The *Scholes* framework crumbles in tort without support from fraudulent-transfer statutes, especially when applied to third parties who never received payments in relation to the scheme.  Without that framework, IPD defeats the Complaint's tort claims because Madison Timber comes to this case with unclean hands.

Normally, the Adverse Interest Exception holds that an agent's misconduct or wrongful knowledge cannot be imputed to his principal if the agent acted in his own self-interest and adversely to the principal, and so here Adams' misconduct would not be imputed to Madison Timber. *In re Evans*, 460 B.R. 848, 890 (Bankr. S.D. Miss. 2011) (*citing Scott Cnty. Milling Co. v. Powers*, 112 Miss. 798, 73 So. 792, 793 (Miss. 1916)) ("the Mississippi Supreme Court has long recognized an exception to the general rule when an agent acts adversely to his principal's interests.").  Trustees especially cite this doctrine to avoid IPD by saying the fraudulent principal acted adversely to the interests of the corporation used in the scheme.

Under many states' Sole Owner Exception (also known as the "sole representative" or "alter ego doctrine"), however, if the corporation is essentially a sole owner's alter ego, the Adverse Interest Exception does not apply and IPD bars the claim. Mississippi embraces alter ego doctrine and disregards corporate formalities where a sole owner treats a corporation as his personal alter ego or uses it to commit fraud.  This Court has explained that "[t]he Mississippi Supreme Court defines alter ego as '[a] corporation used by an individual in conducting personal business, the result being that a court may impose liability on the individual by piercing the corporate veil when fraud has been

perpetrated on someone dealing with the corporation.'" *Jordan v. Maxfield & Oberton Holdings LLC*, 173 F. Supp. 3d 355, 360 (S.D. Miss. 2016) (quoting *Tanfield Eng'g Sys., Inc. v. Thornton*, 97 So. 3d 694, 702 (Miss. 2012) (some internal quotation marks omitted)).[5]

Here, Adams was Madison Timber's only officer or director, as well as its registered agent.  Further, the Complaint states Adams admitted to "all of the conduct of the entire scheme and artifice to defraud." Compl. ¶ 22.  There is no distinction between Adams and Madison Timber under Mississippi law—indeed, the Receiver is appointed to act for both.  Because Madison Timber had no independent identity and was merely Adams' alter ego, the Adverse Interest Exception is unavailable because the interests of Adams and Madison Timber were one and the same.

At least the Second, Third, Sixth, and Eleventh Circuits interpreting various states' laws have rejected trustees' and receivers' tort claims on these grounds and this Court should as well. *Breeden v. Kickpatrick & Lockhart LLP*, 336 F.3d 94 (2d Cir. 2003) (imputation applied to bar trustee tort claims for closely held fraud vehicle because no decision maker in management role or among shareholders was innocent and could have stopped fraud); *Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3rd Cir. 2001) (evaluating trustee-appointed Committee claims "as of the commencement" of bankruptcy and concluding because Committee stood in shoes of debtors it was *in pari delicto* with third parties it sued); *Gold v. Deloitte & Touche LLP*, 622 F.3d 613 (6th Cir. 2010) (applying Sole Actor Exception to impute knowledge in bankruptcy case); *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1203 (11th Cir. 2003) (fraud entity whose "primary existence was as a perpetrator of the Ponzi scheme cannot be said to have suffered

---

[5] See also *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 428 (7th Cir. 2007) (where director was sole shareholder, "he can hardly have defrauded himself or breached a fiduciary duty to himself.").

injury from the scheme it perpetrated"); *Wiand v. Mitchell*, 2007 U.S. Dist. LEXIS 24069, at \*24

(M.D. Fla. Mar. 27, 2007) (applying rationale to receivers under Florida law).

**<u>CONCLUSION</u>**

BankPlus respectfully requests this Court dismiss the Complaint with prejudice and requests

all further relief, both general and special, as mandated by the premises and as justice requires.

Respectfully submitted,

*/s/  Thomas Eamon Slattery*
Kaytie M. Pickett (MS Bar 103202)
Stacey Moore Buchanan (MS Bar 103882)
Robert B. Bieck, Jr. *(pro hac vice)*
Alexander N. Breckinridge, V *(pro hac vice)*
Thomas E. Slattery *(pro hac vice)*
JONES WALKER LLP
190 E. Capitol St., Ste. 800
Jackson, Mississippi 39205
Telephone: (504) 582-8724
Facsimile:  (504) 589-8724
tslattery@joneswalker.com
abreckinridge@joneswalker.com

***Attorneys for Defendants BankPlus & BankPlus Wealth Management LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all parties and/or their counsel of record, by e-mail, by ECF, facsimile, by-hand, and/or by United States mail.

New Orleans, Louisiana, this 28th day of June, 2019.


*/s/  Thomas Eamon Slattery*
Thomas Eamon Slattery